Jacquelin K. LINDSEY,
Plaintiff–Appellee,

v.

Donald L. "Pat" SHALMY, Clark County Manager, et al., Defendant,

and

Cliff Rives, Defendant–Appellant.

No. 92–15938.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1993.

Decided July 14, 1994.

Rex Bell, Deputy Dist. Atty., Las Vegas, NV, for defendant; Walter R. Cannon, Jennifer T. Crandell, Rawlings, Olson & Cannon, Las Vegas, NV, for defendant-appellant.

John J. Tofano, Las Vegas, NV, for plaintiff-appellee.

Before: CHOY, CANBY and NOONAN, Circuit Judges.

CANBY, Circuit Judge:

Cliff Rives appeals the district court's denial of his motion for partial summary judgment on the ground of qualified immunity. We affirm.[1]

## BACKGROUND

Jacquelin Lindsey initiated this action against Rives under 42 U.S.C. §§ 1983 and

---

1. We have jurisdiction pursuant to 28 U.S.C. § 1291 because a denial of a motion for summary judgment raising a defense of qualified immunity is an appealable final order within the meaning of that section. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

1985(3), alleging that Rives deprived her of her federal rights by discriminating against her on the basis of gender.[2] The claims arose out of events that took place from January 1988 to August 1990, when Rives, as Chief of Enforcement in the Clark County Department of Business License (DBL), exercised supervisory authority over Lindsey, a business licensing agent. During this period, Rives allegedly treated Lindsey with great hostility, prepared unfavorable performance evaluations of her work, denied her a promotion in favor of a male candidate and unfavorably altered her job responsibilities. Lindsey asserts that these actions were motivated by Rives's desire to impede her advancement in the department because she is a woman. Thus, she claims, Rives deprived her of a federal right to be free from gender discrimination.[3]

■ Rives moved the district court for summary judgment on the ground of qualified immunity, and the district court denied the motion. We review that denial *de novo. Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993).

## DISCUSSION

### I

■ The doctrine of qualified immunity protects government officials performing discretionary functions from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, we must determine whether a reasonable official in Rives's position in 1988 would have known that his conduct violated Lindsey's clearly established federal rights.

The parties engage in considerable skirmishing over the framing of this test. Rives seizes upon *Harlow's* emphasis on the "objective reasonableness" of the official's conduct. *See id.* at 819, 102 S.Ct. at 2738. He would consequently remove from the inquiry all

reference to his subjective state of mind or his motivation. Rives contends, therefore, that he is entitled to immunity unless a reasonable official in his position would have known that it violated Lindsey's clearly established constitutional rights to refuse to promote her, or to give her unfavorable performance evaluations, or otherwise to treat her adversely in matters related to her employment. The problem with this formulation, of course, is that it is nonsensical in relation to a constitutional tort that depends upon a subjective element, an invidiously discriminatory intent, for its very viability. If that element is left out of the test, then the official will always be immune in cases of alleged invidious discrimination. *See Martin v. District of Columbia Metro. Police Dep't,* 812 F.2d 1425, 1433 (D.C.Cir.1987). Invariable immunity is not an acceptable result. *See id.*

It is clear, therefore, that some account must be taken of Rives's subjective intent in determining whether he is entitled to immunity. We conclude, then, that the proper threshold question is whether a reasonable official in Rives's position in 1988 would know that subjecting Lindsey to adverse employment actions because of her gender would violate Lindsey's clearly established federal statutory or constitutional rights. But we cannot stop there, for that formulation assumes the existence of the disputed motivation, and would send virtually every claim of unlawful discrimination to trial. If the presence of an element of intent too easily defeats a motion to dismiss or a motion for summary judgment, the purposes of qualified immunity that the Supreme Court sought to protect in *Harlow,* 457 U.S. at 816–17, 102 S.Ct. at 2737–38, will be frustrated. The question of immunity is not to be "routinely place[d] ... in the hands of the jury." *Hunter v. Bryant,* 502 U.S. 224, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

We have previously recognized the tension involved in applying *Harlow's* objective anal-

---

2. Lindsey also asserted state law claims against Rives and state and federal law claims against other defendants, none of which is implicated in this appeal.

3. Rives does not dispute that he took measures adversely affecting Lindsey's employment status; he does, however, deny that his actions were the product of a gender-discriminatory motive.

ysis to constitutional torts that embody an element of intent or motive. *Branch v. Tunnell,* 937 F.2d 1382, 1385 (9th Cir.1991). In *Branch,* we adopted a heightened pleading standard in cases where subjective intent is an element of the alleged constitutional tort. We required "nonconclusory allegations of subjective motivation, supported either by direct *or* circumstantial evidence, before discovery may be had." *Id.* at 1387.[4]

■ Here we are dealing with a motion for summary judgment rather than a motion to dismiss, so application of a heightened pleading standard is inappropriate. Nevertheless, *Branch* is instructive. Mere conclusory assertions of discriminatory intent, embodied in affidavits or deposition testimony, cannot be sufficient to avert summary judgment. The court must satisfy itself that there is sufficient "direct or circumstantial evidence" of intent, *id.,* to create a genuine issue of fact for the jury, before it can deny summary judgment on the ground of immunity. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (an issue is not genuine unless a reasonable jury could return a verdict for that party). Here, we conclude that there was sufficient evidence of discriminatory motive presented by Lindsey to support the district court's denial of summary judgment.

Ronald J. Bradshaw, who had worked with Rives on the Las Vegas Metropolitan Police Department stated that in 1978 Rives told him women did not belong in the workplace. Bradshaw also stated that Rives treated females with less respect than he treated males. Daniel R. Fitzpatrick, who was Director of the DBL in the early 1980's described the DBL environment as one in which it was difficult for women to advance. He characterized the DBL in the years immediately following its transfer from the Sheriff's Office to the County, as a "good old boy network." Aubrey Weil, who worked with both Rives and Lindsey in the DBL from 1980 to 1985, stated that Rives had a "misogynistic" dislike of Lindsey and treated her with more disdain than he treated the male agents in the DBL. Finally, Ed Simms, who worked with Rives and Lindsey after Rives's promotion to Chief of Enforcement, stated that Rives "had a tremendous amount of difficulty dealing with women and was, in fact, overly hostile and belligerent towards them.... [Except for Mrs. Jorgensen,] my perception is that he didn't get along with any of them."

Although some of this information is dated, it is all relevant to the determination whether Rives's conduct was prompted by a gender-discriminatory motive. When combined with Lindsey's evidence concerning the actions taken by Rives, this evidence is sufficient to establish a genuine issue of material fact as to Rives's motive. Accepting the evidence, a reasonable trier of fact could find that Rives's actions against Lindsey were taken because she is a woman. The district court therefore properly denied Rives's motion for summary judgment.

## II

Rives argues that, even if it is assumed that he discriminated against Lindsey because of her gender, he is entitled to qualified immunity because any federal right of Lindsey to be free of gender discrimination was not clearly established by 1988. He asserts that in 1988 it was clearly established only that refusing to *hire* a person on the basis of gender would violate federal law, and that it was not clearly established that denial of promotion, adverse alteration of job responsibilities and other hostile treatment would violate federal rights. We disagree.

■ The Equal Protection clause of the Fourteenth Amendment confers a "federal constitutional right to be free from gender discrimination" at the hands of governmental actors. *Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979). This right is broad enough to prohibit state actors from engaging in intentional conduct designed to impede a person's career advancement because of her gender.

**4.** In accepting *either* direct *or* circumstantial evidence, *Branch* differentiated its position from that of the District of Columbia Circuit, which in a similar circumstance insisted upon "direct evidence" of improper motivation. *Martin,* 812 F.2d at 1435.

■ Well prior to 1988 the protection afforded under the Equal Protection Clause was held to proscribe *any* purposeful discrimination by state actors, be it in the workplace or elsewhere, directed at an individual solely because of the individual's membership in a protected class. *See Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). Thus, the Court held that the Clause prohibits discriminatory application of neutral statutes, *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and discriminatory use of peremptory challenges, *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although those cases dealt with racial discrimination, the same principles supported challenges of gender discrimination in contexts other than refusals to hire well prior to 1988. *E.g., Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975) (challenge to state law creating parental support obligation for sons until the age of 21, but for daughters only until the age of 18). This protection extended to workplace discrimination. *E.g., Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1185 (7th Cir.1986) (sexual harassment); *Headley v. Bacon,* 828 F.2d 1272, 1274–75 (8th Cir.1987) (same); *see also Roberts v. College of the Desert,* 870 F.2d 1411 (9th Cir.1988) (affirming verdict against defendant in § 1983 action grounded on denial of due process and equal protection based upon sex discrimination manifested through demotion, and other restrictions in the workplace, although focusing on the due process ground); *cf. Meritor Savings Bank v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (sexual harassment can constitute sex discrimination under Title VII).

Thus, Rives's contention that Lindsey only possessed a federal right not to be refused employment on the basis of gender in 1988 clearly is unsupportable.[5] A reasonable official in Rives's position in 1988 would have understood that unfavorably altering Lindsey's job assignments, preparing unfavorable performance evaluations of her work and displaying a hostile attitude toward her causing others in the department to ostracize her, violated her clearly established federal constitutional rights—provided, of course, that Rives took these actions against Lindsey because of her gender.

### CONCLUSION

Lindsey had a clearly established federal constitutional right to be free of gender discrimination at the hands of a state actor in 1988. Lindsey has produced sufficient direct or circumstantial evidence of discriminatory intent to create a genuine issue of material fact as to whether Rives was motivated by hostility to her gender. The district court accordingly did not err in denying summary judgment on the ground of qualified immunity.

**AFFIRMED.**

---

5. This case involving a constitutional equal protection challenge to governmental action is to be differentiated from challenges to private action brought under the "right of contract" provisions of 42 U.S.C. § 1981. Those provisions were held by the Supreme Court not to apply to post-hiring decisions, in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Congress subsequently amended § 1981 to define the right of contract to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) (Supp.1994).