**Susan A. BATOR, Plaintiff–Appellee,**

v.

**STATE OF HAWAII, Defendant,**

**and**

**Carolyn M. KAINUMA, in her individual capacity; Warren T. Asaeda, in his individual capacity, Defendants–Appellants.**

**No. 92–15950.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided Nov. 8, 1994.

Steven S. Michaels, Atty. General's Office, Honolulu, HI, for defendants-appellants.

John A. Chanin, Honolulu, HI, for plaintiff-appellee.

Before: POOLE, WIGGINS, and T.G. NELSON, Circuit Judges.

POOLE, Circuit Judge:

Carolyn Kainuma, a supervisor in the Adult Probation Division of the First Circuit Court of the state of Hawaii, and Warren Asaeda, a probation officer, appeal the district court's denial of their summary judgment motion asserting qualified immunity from suit as to the 42 U.S.C. § 1983 claims raised in Susan Bator's action against them. Bator claimed that she suffered racial and sexual harassment when Asaeda assaulted her on several occasions and when Kainuma failed to investigate her complaints regarding these attacks and other harassment. She also alleged that she was denied promotions and given more work because of her race and gender.[1]

We have jurisdiction to review the district court's summary judgment denying qualified immunity, and we review that denial de novo. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 870–71 (9th Cir.1993). We affirm.

I

Susan Bator, a white female, moved to Hawaii in 1979 at the age of 23 after working for several years as a court reporter in the Pennsylvania state legislature. She worked as a secretary for about a year and a half, and in December 1981, she began work as a clerk stenographer at the Adult Probation Division of the First Circuit Court of the state of Hawaii. After she completed a six-month probationary period, she became a permanent employee.

Bator left her job in 1988. In May 1991, she filed this action, claiming that she had experienced sexual harassment and racial discrimination during her tenure at the Probation Division.

According to Bator, her problems started in 1982, when Glennard Fong, a married man and a presentence investigation supervisor,

---

1. Bator's Title VII claims are still pending in the district court.

asked Bator to be his date at a "water ski-ing/bikini party" that he was holding. Ba-tor's direct supervisor, Carolyn Asato, told Bator that she wanted her to go with Fong and that Bator could have the day off be-cause the party was being held on a work day. Bator refused to go. "Immediately" after her refusal, Alvin de la Cruz, a proba-tion officer, told Bator that "[m]aybe we should fire you" for refusing to go with Fong.

Thereafter, Bator asserts, she was continu-ally harassed:

> I was increasingly ostracized, harassed, sexually harassed, repeatedly hit on sexual parts of my body, called racist names, picked on, made fun of, criticized ..., and I was treated differently at work by my clerical supervisor and by the other em-ployees of Japanese ancestry, and to a lesser extent by all of the other ... em-ployees.... Starting in 1987 until I left the office for the last time in April of 1988, employees in the office, both male and female, would intentionally physically hit me against my wishes by hitting me on sexual parts of my body, which included my breast area, my rearend area, and physically coming into contact with me on other parts of my body against my wishes. This physical contact was not accidental, but it was intentional and was a source of amusement for the employees who were doing the sexual harassment.

In her affidavit, Bator provided specific examples of physical and verbal abuse.

In April 1987, Zachary Higa, a coworker, hit Bator across her chest at work in the presence of nine other male employees, in-cluding a supervisor. The male employees laughed and encouraged Higa, who never apologized. In June 1987, Glenn Komiyama,

a senior probation officer, struck Bator's but-tocks with his chair as she tried to walk by his desk. He did not apologize. During 1987, Bator states that she was hit or struck repeatedly by three coworkers, one of whom was Warren Asaeda.

Bator complained about these incidents to Asato, her supervisor, and later to Asato's replacement, Carolyn Kainuma. Bator also notified three other employees: another ste-nographer, a branch administrator, and a senior probation officer. When Bator com-plained to Kainuma, Kainuma often acted irritated. On one occasion, Kainuma stood up from her desk and "rammed" into Bator. No investigations into the harassment were conducted by Kainuma or any other person in the Probation Division.

Between 1987 and April 1988, Bator re-ported to Kainuma that Asaeda was becom-ing more hostile and abusive. By February and March 1988, her coworkers' verbal abuse of her also had escalated.[2]

According to Bator, on April 29, 1988, while she was standing at a Xerox machine, "Asaeda struck me from behind with a legal folder which he rammed up into my vaginal and my rectal areas from behind me." Bator reported the episode to Kainuma and later that day, Bator and Kainuma met with the acting branch administrator, Nathanial Kim, to discuss the incident. Bator left the office that day and never returned to her job.

Bator sought medical treatment and was diagnosed as having a mild contusion to the perianal area with a secondary psychogenic reaction. She filed a workers' compensation claim with the state Labor and Industrial Relations Board, which, on appeal, character-ized the sole issue as whether Bator sus-

---

2. In February 1988, Eleanor Kekauoha, a super-visor, told another employee within Bator's hear-ing that "[m]aybe we should all bring our whips and chains into work and use them on Susan." In March 1988, Peter Yoshihara, a senior proba-tion officer, told Bator that "[m]aybe we should have you set up." Tami Welch, a stenographer, told Bator that she would have to "try to find herself a rich husband, rather than try to get promoted." Another clerk stenographer, Vera-lyn Ogata, told Bator that "[t]here is going to be a war in our office, and somebody around here is going to need disability insurance." Ogata also

told other clerical workers in Bator's presence that Bator was "not like we are." Ronald Ha-jime, a supervisor, told Bator on two occasions that she was an evil person. Margaret Kiyonaga, a stenographer who helped Carolyn Kainuma, Bator's supervisor, told Bator at a meeting in Kainuma's presence that Bator should quit her job or she would pay "hard consequences." Kainuma "did not disagree with these remarks." Taeko Nakamura told Bator that her coworkers were out to get her and that there was going to be a murder in the office.

tained an injury arising in the course of her employment. The Board found that Asaeda had bumped Bator unintentionally with his elbow and that Bator suffered a work injury compensable under the workers' compensation statute.

In addition to her claims that she suffered physical and verbal abuse at the hands of her coworkers, Bator asserted that she was denied promotions because of her race and gender, and gave examples of nonwhites who were promoted. She also provided evidence that she was given more work than other nonwhite clerical workers. Finally, Bator provided evidence that other white women complained of discrimination. Michelle Wentzell, a senior probation officer, filed a complaint charging discrimination and harassment with the Hawaii Department of Labor and Industrial Relations.[3] A former probation officer, Christine Gambles, testified at a deposition that she had experienced discrimination on the job: "[i]t just seemed obvious to me that the Japanese men were hired first and after that it was the Japanese women and then it was other local people.... It was just so obvious."[4]

The defendants responded to Bator's evidence by alleging that Bator acted strange at work, communicated primarily by typewritten notes rather than orally, walked around with her head down, rarely made eye contact with others, daydreamed, procrastinated, didn't do her share of work, required constant supervision, sometimes wore inappropriate outfits and heavy makeup, and stacked files on her desk to create a wall around herself. She received some negative performance appraisals.[5] According to the defendants, the hall where the copy machine is located is narrow and crowded, and there is a certain amount of bumping.

The defendants also proffered evidence that Bator had psychiatric problems. In August 1988, a board-certified psychiatrist and neurologist, Dr. Byron Eliashof, diagnosed her as having an "Axis I ... Delusional (Paranoid) Disorder with Persecutory and Somatic Features" and an Axis II "pre-existing Schizotypal Personality Disorder" which culminated in "a major psychiatric disorder beginning [in] 1984." The psychiatric report discussed Bator's sometimes bizarre behavior and her difficulties with her coworkers, landlord, and family. Dr. Eliashof also opined that the "redness and irritation in her rectal and vaginal area, which was noted on examination, could not be mechanically caused by a file folder, particularly with regard to the type of slacks she was wearing."

The district court determined that, when it viewed the evidence in the light most favorable to Bator, there were "genuine issues of material fact ... as to whether Kainuma and Asaeda may have violated Bator's clearly established constitutional right to be free of sexual and racial discrimination." Accordingly, the district court denied Kainuma's and Asaeda's motion for qualified immunity. Kainuma and Asaeda have timely appealed.

### II

The defendants first contend that because Bator's claims of harassment are implausible, the district court should have required Bator to offer more evidence to defeat their summary judgment motion. The implausibility of her claims is shown, they argue, by Dr. Eliashof's diagnosis that she is paranoid and by his opinion that the symptoms she felt could not have been caused by a file folder.

■ Summary judgment is appropriate if, when the evidence is viewed in the light most favorable to the nonmoving party, there are

---

3. In a deposition taken by the defendants, Elizabeth Cattaneo, an employee in the Probation Division, stated that she believed Wentzell suffered from "very serious mental or emotional problems." The record does not reveal Cattaneo's position in the Probation Division.

4. In her brief, Bator refers to another white female employee, Nancy Skipper, who allegedly suffered harassment and discrimination by Japanese–American and local employees. The only

reference to this in the record is in Bator's opposition to the defendants' summary judgment motion, where she states that "[i]n an office in which out of 65 employees only five were Caucasians, at least three others, all female and Caucasian, shared Plaintiff's plight."

5. At the hearing regarding workers' compensation, Bator's supervisor, Kainuma, testified that Bator was a hard worker.

no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Banks v. Bethlehem Steel Corp.*, 870 F.2d 1438, 1441 (9th Cir.1989). Although the moving party must demonstrate the absence of a genuine issue of fact for trial, the nonmoving party may not rest on allegations in her pleadings but must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629–30 (9th Cir.1987).

Moreover, if the factual context makes the nonmoving party's claim implausible, then that party "must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). At the summary judgment stage, however, the district court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990).

The defendants' argument is not persuasive. Bator's detailed story is not so implausible, even taking into consideration her alleged mental problems, that she should be required to come forward with additional evidence. Some of her story, such as the reporting of ongoing harassment, is corroborated by her supervisors. In addition, the Hawaii Labor and Industrial Relations Board agreed that she suffered an injury compensable under the workers' compensation statute.

Dr. Eliashof's opinion that Bator's symptoms (redness, irritation, and burning) could not have been caused by a file folder does not make her story implausible. First, he did not examine her injury. Second, any preexisting condition could have been aggravated by Asaeda's alleged assault on her. Dr. Eliashof's opinion is not inconsistent with a conclusion that Bator actually was assaulted. Finally, the symptoms do not make or break her discrimination claim: it is the alleged harassment and unwanted physical attention that constitute discrimination.

The defendants' analogy to *Denton v. Hernandez*, — U.S. —, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), does not compel a contrary conclusion. In *Denton*, the Supreme Court held that a district court may dismiss as frivolous an in forma pauperis complaint under 28 U.S.C. § 1915(d) if "the facts alleged rise to the level of the irrational or the wholly incredible." — U.S. at —, 112 S.Ct. at 1733. A dismissal under section 1915(d), however, is not a dismissal on the merits or a bar to the filing of a paid complaint: it means only that the litigant may not file the complaint at government expense. — U.S. at —, *Id.* at 1734. *Denton* is an exception to the general rule that a district court must accept factual allegations as true, — U.S. at —, *id.* at 1733, and it makes sense in the context of section 1915(d) dismissals. There is no basis for extending the rule to summary judgment dismissals, where the district court cannot assess credibility. *See Musick*, 913 F.2d at 1394.[6]

## III

The defendants next contend that Bator's claim against Warren Asaeda is defeated by the state Labor and Industrial Relations Appeals Board's finding that Asaeda unintentionally bumped Bator on the back with his left elbow. They argue that the district court erred by not treating this finding as precluding Bator's claim that Asaeda struck her intentionally.

Federal courts must accord a state court judgment the same preclusive

---

**6.** In fact, it could be argued that the defendants' position that Bator is making this up because of severe mental and emotional problems is not credible, given that they argued that Michelle Wentzell, who claimed that she was discriminated against on the basis of race and gender, also "suffered from very serious mental or emotional problems." This coincidence could be viewed as fantastic. Also, it could be that an employee who is subjected to harassment over a substantial period of time might develop emotional problems and symptoms of paranoia. We make these observations only to underscore that credibility determinations and resolutions of disputed fact should not be made at the summary judgment stage.

effect that the judgment would receive in state court. *Allen v. McCurry,* 449 U.S. 90, 94–96, 101 S.Ct. 411, 414–16, 66 L.Ed.2d 308 (1980); *Trujillo v. County of Santa Clara,* 775 F.2d 1359, 1363 (9th Cir.1985); *see University of Tennessee v. Elliott,* 478 U.S. 788, 798–99, 106 S.Ct. 3220, 3225–27, 92 L.Ed.2d 635 (1986) (rule applies to factfinding by administrative agencies acting in quasi-judicial capacity). Under Hawaii law, state courts give preclusive effect to the findings of an administrative agency if the issue decided in the prior action is identical to the issue in the current action, a final judgment on the merits was issued, and the parties in the current action are the same or in privity to the parties in the prior action. *Santos v. State,* 64 Haw. 648, 646 P.2d 962, 965–66 (1982).

The district court properly determined that the Board's finding—that the contact was unintentional and caused by an elbow—was not necessary to the holding that Bator suffered an injury compensable under the workers' compensation statute. The Board characterized the sole issue as whether Bator suffered an injury, and its conclusion that she suffered an injury is the only finding that should be given preclusive effect.

### IV

 The defendants argue that they are entitled to qualified immunity on Bator's claim of sexual harassment because Bator did not show that during her tenure at the Probation Division, she had a clearly established constitutional right to be free of harassment that is motivated by gender.

 Qualified immunity protects state officials from section 1983 liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). It is the plaintiff's burden to prove that the defendants violated a right that was "clearly established" at the time of the alleged misconduct. *Baker v. Racansky,* 887 F.2d 183, 186 (9th Cir.1989). A right is "clearly established" if its "contours [are] ... sufficiently clear that a reasonable official would understand that

what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); accord *Act Up!/Portland,* 988 F.2d at 871.

Bator complains of persistent and unwelcome physical and verbal abuse by her co-workers, and she alleges that this treatment was motivated by her gender. These allegations state a claim of sexual harassment, which can be impermissible sex discrimination in violation of the Equal Protection Clause. *See Lindsey v. Shalmy,* 29 F.3d 1382, 1385–86 (9th Cir.1994); *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1109, 1112–13 (9th Cir.1991). The defendants argue, however, that they are entitled to qualified immunity because the constitutional right to be free of sexual harassment was not clearly established during the period of Bator's employment. We disagree.

By the mid–1970s, the Supreme Court had announced that the Equal Protection Clause proscribes purposeful discrimination by state actors, in the workplace and elsewhere, based solely on an individual's membership in a protected class. *See, e.g., Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 264–68, 97 S.Ct. 555, 562–65, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). This court held in 1980 that "[t]he constitutional right to be free from such invidious discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it." *Flores v. Pierce,* 617 F.2d 1386, 1392 (9th Cir.) (citing *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958)), *cert. denied,* 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980).

These principles have long supported equal protection challenges to gender discrimination. In 1971, the Supreme Court recognized that a law that treats women unequally violates the Equal Protection Clause. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (statutory preference for men as estate administrators); *see also Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43

L.Ed.2d 688 (1975) (different parental support obligations for sons and daughters); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (different requirements for entitlement to fringe benefits for spouses of male armed services members and spouses of female armed services members). In 1979, the Supreme Court held that the Equal Protection Clause conferred a "federal constitutional right to be free from gender discrimination" in the workplace at the hands of government actors. *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979) (discriminatory firing).

Drawing on these cases, this court recognized that state employees have a clearly established constitutional right not to be refused employment because of their sex. *See Lowe v. City of Monrovia*, 775 F.2d 998, 1011 (9th Cir.1985), *amended on other grounds*, 784 F.2d 1407 (9th Cir.1986). Recently, we held that it was clearly established by 1988 that denial of a promotion, adverse alteration of job responsibilities, and other hostile treatment were impermissible sex discrimination in violation of the Equal Protection Clause. *Lindsey*, 29 F.3d at 1385–86; *accord Roberts v. College of the Desert*, 870 F.2d 1411, 1413–14, 1417 (9th Cir.1988) (sex discrimination shown by demotion). We also have held that severe or pervasive physical and verbal harassment can be impermissible sex discrimination under the Equal Protection Clause. *See Sischo–Nownejad*, 934 F.2d at 1109, 1112–13.

A long line of Title VII cases also shows the clear prohibition against sexual harassment in the workplace.[7] Title VII of the 1964 Civil Rights Act prohibits sex discrimi-

nation in employment. 42 U.S.C. § 2000e–2(a)(1). This prohibition extends to sexual harassment. *Harris v. Forklift Sys., Inc.*, — U.S. —, —, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 73, 106 S.Ct. 2399, 2408–09, 91 L.Ed.2d 49 (1986); *Sischo–Nownejad*, 934 F.2d at 1109; *Ellison v. Brady*, 924 F.2d 872, 875–80 (9th Cir.1991). Courts have recognized that sexual harassment is sex discrimination in violation of Title VII at least since 1977. *See, e.g., Barnes v. Costle*, 561 F.2d 983 (D.C.Cir.1977) (first Court of Appeals to hold that sexual harassment is sex discrimination); *see also Otto v. Heckler*, 781 F.2d 754, 756 (9th Cir.) (citing *Barnes* and recognizing that sexual harassment has been considered sex discrimination since 1977), *amended*, 802 F.2d 337 (9th Cir.1986).

Finally, other courts have long recognized that the constitution prohibits sexual harassment by state actors. *See, e.g., Andrews v. City of Philadelphia*, 895 F.2d 1469, 1473–74, 1479 (3rd Cir.1990) (constitutional right to be free of sexual harassment such as propositions, foul language, exposure to pornography, and interference with work was "well grounded in law and widely known to the public by 1986"); *Volk v. Coler*, 845 F.2d 1422, 1431 (7th Cir.1988) (sexual advances and verbal abuse); *Bohen v. City of East Chicago*, 799 F.2d 1180, 1182–83, 1185–86 (7th Cir.1986) (physical and verbal abuse); *Goodwin v. Circuit Court*, 729 F.2d 541, 546–47 (8th Cir.1984) (sexist remarks).

We conclude that Bator had a clearly established constitutional right to be free of sexual harassment. Subjecting a woman to

---

7. Title VII cases are relevant to the discussion of when the constitutional right to be free of sexual harassment became clearly established because Title VII and equal protection cases address the same wrong: discrimination. Title VII case law establishes that sexual harassment is prohibited sex discrimination, and it reflects our collective understanding of what conduct violates a person's rights. Indeed, our cases "indicate that there is a very close relationship between [Title VII and equal protection] ... claims," and, not surprisingly, case law on equal protection tracks case law on Title VII. *See Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 472 (9th Cir. 1991); *Sischo–Nownejad*, 934 F.2d at 1112–13.

Certainly Title VII and equal protection claims of sexual harassment differ. For example, a plaintiff must show intentional discrimination and state action for equal protection claims (but not for Title VII claims), and Title VII requires exhaustion of administrative remedies. These differences, however, do not detract from the relevance of Title VII cases to equal protection claims. The state action and exhaustion differences do not affect what is prohibited; they affect who can be sued and how the wrong can be remedied. The intent requirement *is* substantive, but if case law establishes that sexual harassment is prohibited, then surely "intentional" sexual harassment also is prohibited.

abuse on the job is exactly the kind of sex discrimination prohibited by the Equal Protection Clause and Title VII. A reasonable state official would have understood this during Bator's tenure at the Probation Division.

V

■ The defendants argue, however, that they are entitled to qualified immunity because Bator did not proffer any evidence that her race or gender motivated their acts. The pertinent inquiry is whether Bator "set forth sufficient facts showing ... a genuine issue for trial" that she suffered "purposeful, invidious" harassment in violation of the Equal Protection Clause. *See T.W. Elec. Serv.*, 809 F.2d at 629–30 (summary judgment standard); *Flores*, 617 F.2d at 1391–92 (equal protection standard); *see also Lindsey*, 29 F.3d at 1384–85 (plaintiff must show evidence of discriminatory motive).

Bator has met this standard. She presented evidence that she was harassed when she refused to go on a date with a married man, was called racist names, was denied promotions and given more work because of her race and gender, and was hit intentionally many times on her breasts, buttocks, and other areas of her body. The physical attacks culminated when Asaeda allegedly rammed a file folder between her legs. Bator also provided evidence that other women experienced harassment and discrimination based on their race and gender. Moreover, her supervisor confirmed that Bator reported harassment, and the Hawaii Labor and Industrial Relations Board agreed that she suffered an injury on the job. In sum, Bator has provided evidence of a purposeful pattern of discrimination and harassment sufficient to withstand the defendants' summary judgment motion.

■ The defendants also argue that there is no basis for liability against Kainu-

ma, Bator's supervisor, who they assert was not responsible for Asaeda's alleged assault on Bator. A supervisor who has been apprised of unlawful harassment, however, should know that her failure to investigate and stop the harassment is itself unlawful. *See Andrews*, 895 F.2d at 1479 (making this argument and holding that condoning or failing to investigate harassment violates the Equal Protection Clause); *Bohen*, 799 F.2d at 1185–87 (same); *see also Ellison v. Brady*, 924 F.2d 872, 881–83 (9th Cir.1991) (employers are liable under Title VII for failing to remedy a hostile or offensive work environment of which management employees knew, or reasonably should have known); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1515–16 (9th Cir.1989) (same).

■ The defendants nevertheless argue that Kainuma is entitled to qualified immunity because the contours of a supervisor's responsibility to investigate harassment are uncertain. Bator asserts, however, that her supervisors, including Kainuma, ignored her complaints. Even if the contours of a supervisor's responsibility are uncertain, complete inaction in the face of claimed harassment cannot be objectively reasonable conduct entitling a supervisor to qualified immunity. *See Ellison*, 924 F.2d at 881 (Title VII); *Andrews*, 895 F.2d at 1479 (equal protection). If an employer knows of the harassment but takes no action, the employer is liable. *See Hacienda Hotel*, 881 F.2d at 1516.

The defendants' argument provides no basis for reversing the district court's denial of qualified immunity to Kainuma.[8]

VI

Because Bator proffered sufficient evidence to establish a genuine issue of material fact as to whether the defendants intention-

---

8. In addition, Bator provided other evidence that Kainuma, her supervisor, discriminated against her by giving her more work and by denying her promotions. This treatment, if it was motivated by Bator's race or gender, violates the Equal Protection Clause. *Lindsey*, 29 F.3d at 1385–86.

ly violated her clearly established constitutional rights to be free of sexual harassment and racial discrimination, the district court properly denied the defendants qualified immunity.[9]

**AFFIRMED.**

**9.** For the first time on appeal, the defendants argue conclusorily that they are entitled to either Eleventh Amendment immunity or qualified immunity as to Bator's pendent state claims alleging mental and emotional distress. Because this argument was not raised in the district court, we do not address it on appeal. The district court may consider it on remand. *But see Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir.1993) (defense of qualified immunity should be raised in answer but may be raised on summary judgment if there is no prejudice to the plaintiff).