COLLOTON, Circuit Judge,
dissenting.
This case presents a plaintiff, Terri Wallace, who was laid off from her position as a manager at an airport rental car station. *1125 It is undisputed that the employer, Dollar Rental Car (“Dollar”), advised her at the time of the lay-off that the action was taken because the company had experienced a downturn in revenue at her location, there were too many managers at her location, and she was the least senior of the one-too-many managers. Wallace now concedes that, indeed: (1) the events of September 11, 2001, greatly affected the travel industry, including car rental agencies, (J.A. at 66-67; see also id. at 45, ¶ 27); (2) there was a downturn in the revenue at her location at the time of her layoff, (id. at 68); (3) four managers at her location were too many, particularly in light of the downturn of business since September 11, (id. at 68); and (4) she was the least senior of the four managers at her location. (Id. at 76). There is likewise no genuine dispute that the employer promulgated lay-off procedures on September 21, 2001, providing that “[f]or field locations, layoffs must be based upon the employee’s seniority.” (Id. at 96). Under those circumstances, the district court ruled that there was no genuine issue of fact concerning whether the plaintiff was laid off for a legitimate business reason, and dismissed the complaint.
The plaintiff claims, nonetheless, that she was terminated in retaliation for making a complaint of sexual harassment.[4] The governing statute prohibits discrimination against an employee “because [s]he has opposed any practice made an unlawful employment practice by this subchapter.” 42 U.S.C. § 2000e-3(a). Wallace does not claim to have opposed an employment practice that was actually unlawful, but our court has held that the statute also encompasses opposition to practices that are not unlawful, if an employee acted based on a good faith, objectively reasonable belief that the practices were unlawful. Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir.1995); cf. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (noting that Supreme Court had no occasion to rule on propriety of this interpretation). Dollar does not argue that Wallace’s report of Brad Kjar’s behavior was outside the scope of opposition protected by the statute. Cf. Breeden, 532 U.S. at 271, 121 S.Ct. 1508.
Wallace’s retaliation claim is thus considered under the traditional burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Cronquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir.2001). Assuming the plaintiff has made a prima facie case, she must then present evidence sufficient to show that Dollar’s proffered reason for her lay-off was a pretext for discrimination, and that the company’s alleged discriminatory motive was determinative in the decision to effect the lay-off. Id.; see also Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).[5] Dollar is not liable, therefore, unless the evidence shows that but for an alleged desire to retaliate against Wallace *1126 for reporting Kjar’s behavior, Dollar would have continued to employ an extra manager that Wallace concedes was not justified as a matter of sound business management. See Miller v. CIGNA Corp., 47 F.3d 586, 595-96 (3d Cir.1995) (en banc). Where the plaintiff advances a claim that “simply makes no economic sense,” the plaintiff must “come forward with more persuasive evidence to support [her] claim than would otherwise be necessary.” Mat-sushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see also Fender v. Bull, 437 F.3d 770, 775 (8th Cir.2006); Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir.1994). The court’s opinion offers no persuasive reason to conclude that absent Wallace’s report about Kjar, Dollar would have followed an unsound business practice and continued to fill an unnecessary position at the Kansas City airport.
The court cites the correlation of timing between the plaintiffs complaint and the lay-off, a factor that we have said repeatedly is generally insufficient to make even a prima facie case of retaliatory motive. Gagnon v. Sprint Corp., 284 F.3d 839, 851 (8th Cir.2002); Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.1999); Nelson v. J.C. Penney Co., Inc., 75 F.3d 343, 346-47 (8th Cir.1996); but cf. Peterson v. Scott County, 406 F.3d 515, 524-25 (8th Cir.2005). Nonetheless, the court finds these precedents “unhelpful,” and says that temporal proximity alone actually provides “strong support” for the claim that the conceded legitimate reason for Wallace’s layoff was really a pretext for discrimination. Ante, at 1121. The court relies on its view that the “business conditions cited by the Company had existed for a number of months before Wallace made her report” concerning Kjar.
The precise condition that led to the layoff of Wallace, however, did not exist for several months before the employment action. The supervisor, Tom Mierendorf, had hoped to avoid a lay-off by arranging to promote one of the extra managers at the Kansas City location, but in April 2002, this manager, Mark Lovelace, performed inadequately during a trial management opportunity in Louisville. (J.A. at 322-23). Dollar thus “realized that Mark Lovelace was not going to be leaving any time soon,” (id. at 336), and the company was left with the “business condition” that necessitated a layoff — one manager too many, with no prospect of an impending departure to resolve the problem. (Id. at 209, 322, 336). This circumstance led Dollar’s vice president for operations, Jim Duffy, in consultation with Mierendorf, to conclude that a lay-off was necessary. (Id. at 190, 209, 336). Mierendorf testified that the possibility of a lay-off had been under consideration for months before Wallace’s report of Kjar’s behavior, but that the ultimate decision to reduce the workforce was made “right after Louisville,” that is, right after Lovelace was deemed unready for a promotion. (Id. at 332). “[T]he simple fact that the employer’s testimony is necessarily self-interested” is not “enough under our previous cases to allow the jury to find that the employer’s proffered reasons were pretextual.” Nelson, 75 F.3d at 346.
The court also finds it significant that the plaintiff was the only manager laid off in the Midwest region in 2002, but the evidence presented was that other stations were able to reduce staff through attrition or reduction of non-management employees, and at least one departing manager was not replaced. (J.A. at 313-17, 339). Most important, there was no evidence that other stations retained managers that everyone — employee and employer alike— agreed were excessive. The absence of layoffs in stations that were not shown to be overstaffed does not support an inference of retaliatory motive.
*1127 Although Wallace made no claim that she was denied an opportunity to transfer based on retaliatory motive, the court concludes that the company’s failure to provide an opportunity to transfer supports a finding of discriminatory motive for the lay-off. There is a logical disconnect, however, between Wallace’s argument regarding a transfer and the disputed lay-off. Wallace contends that the company treated her differently than it might have treated another person who was laid off and sought to transfer. But even if true, this in no way undermines Dollar’s explanation that the underlying lay-off occurred because of overstaffing in Kansas City. Having failed to bring an action alleging a retaliatory refusal to transfer, Wallace cannot now bootstrap an abandoned claim into an entirely separate allegation concerning the company’s decision to reduce its workforce at the Kansas City Airport.
Snippets of testimony from supervisor Mierendorf also do not make this a sub-missible retaliation case. Mierendorf never objected to Wallace opposing Kjar’s behavior. To the contrary, Mierendorf testified that “[s]he has the right to make someone stop,” (J.A. at 335), that it was “appropriate” for Wallace to report the matter to him rather than to Kjar, (id. at 331), and that he had “no problem” with her approaching him directly. (Id. at 336). Mierendorf himself assured Wallace in writing on the very date of her initial report that there “cannot be retribution” for the report, and that he would “make Brad [Kjar] very clear on that.” (Id. at 87). Mierendorf merely expressed disappointment that communication within his Kansas City office had failed, because Wallace and Kjar could not resolve the situation through informal discussions, even though five months had passed between the date of the incidents and Wallace’s report. (Id. at 336). Mierendorf felt no sympathy for Kjar, because he “caused an event to occur,” and Mieren-dorfs regret that the atmosphere of the workplace might become more tense and less lively was a comment on the entire “situation” — i.e., Kjar’s inappropriate behavior and the breakdown of communication in the Kansas City office — not on Wallace’s decision to make a report. (Id.).
But even assuming, for the sake of argument, that Mierendorfs comments reasonably could be read as indicating displeasure that Wallace had opposed Kjar’s conduct, this inference would not demonstrate that Dollar’s legitimate explanation was pretextual. At most, it would show that Mierendorfs allegedly improper motive coincided with the company’s legitimate motive to eliminate overstaffing, a circumstance that is insufficient to state a retaliation claim under Title VII, unless the improper motive had a determinative influence on the outcome. See Miller, 47 F.3d at 597 & n. 9. What is lacking on this record is evidence that Dollar would not have acted to reduce its workforce for economic reasons that everyone agrees dictated a reduction. Viewed in light of Dollar’s uncontested non-discriminatory rationale, Mierendorfs comments do not constitute the sort of “substantial evidence” of pretext that would permit a reasonable inference that discriminatory intent by the company was determinative in the employment decision. See Taylor v. White, 321 F.3d 710, 715 (8th Cir.2003) (to defeat motion for summary judgment, facts and circumstances relied upon by plaintiff “must attain the dignity of substantial evidence”).
It is further asserted that the employer has given “shifting explanations” for the layoff, ante, at 1124, but Dollar has maintained consistently since the date of the employment action that Wallace was laid off because the station had too many managers, and she was the least senior manag *1128 er. The employer’s reference to the vesting of the plaintiffs benefits was simply a response to the plaintiff’s argument that raised the topic: “Plaintiff failed to present evidence that defendant’s reason was pretextual, admitted the reason was true and, in fact, articulated an additional non-retaliatory reason for her own layoff alleging in her Petition that she was ‘informed that she was being laid off one day before her benefits vested.’ ” (Appellee’s Br. at 19). Similarly, the plaintiffs performance was not offered as a reason for the lay-off; it was discussed in response to the plaintiffs entirely different argument (not raised in her complaint or EEOC charge) that the company impermissibly failed to transfer her to another location.
The parties agree that the business reason stated for Dollar’s employment action was entirely legitimate and dictated by business economics. The reason was determined and articulated at the time of the lay-off; it was not an “after-the-fact explanation.” Cf. ante, at 1124. The evidence does not support the uneconomic conclusion that but for the employee’s report of unprofessional workplace behavior by a colleague, Dollar would have retained an unnecessary employee. I would therefore affirm the judgment of the district court.

. There is no claim on appeal that Wallace was actually a victim of sexual harassment. The district court dismissed Wallace's allegation of sexual harassment, concluding as a matter of law that she failed to establish that Brad Kjar’s conduct created a hostile work environment actionable under Title VII.

. The Civil Rights Act of 1991 amended Title VII to provide that a plaintiff establishes an unlawful employment practice when she "demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.” 42 U.S.C. § 2000e-2(m). This amendment does not affect the analysis here, because it does not apply to retaliation claims under Title VII. Norbeck v. Basin Elec. Power Coop., 215 F.3d 848, 852 (8th Cir.2000).