OONA R.–S., a Minor, by KATE S., her Guardian, Kate S., and Ken R., Plaintiffs,

v.

SANTA ROSA CITY SCHOOLS, et al., Defendants.

No. C 94–0623 TEH.

United States District Court, N.D. California.

May 2, 1995.

Desiree O. Cox, Nancy J. LoDolce, Santa Rosa, CA, for plaintiffs.

Michael D. Senneff, Senneff, Kelly, Kimelman & Beach, Santa Rosa, CA, for defendants.

### ORDER

THELTON E. HENDERSON, Chief Judge.

On November 14, 1994, the Court heard oral argument on motions to dismiss filed in this action by several individual school district employees (collectively "Defendants"), the Santa Rosa City School District, and Drew Ibach ("Ibach"). In an order issued on November 23, 1994, the Court ruled on several of those motions. The Court also ordered the parties to submit supplemental briefing on two issues related to Defendants' and Ibach's motions to dismiss plaintiffs' claims brought under 42 U.S.C. section 1983. All parties timely submitted these supplemental briefs.

Having reviewed the written and oral arguments submitted by the parties, and good cause appearing, the Court rules on the motions which remain pending before it as follows. Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART, and Ibach's motion to dismiss is DENIED for the reasons explained below.

### I. BACKGROUND

Plaintiff Oona R.–S. ("Oona") and her parents bring this suit against the Santa Rosa City School District ("District") and against several employees of the District for events which allegedly took place when Oona was an 11–year–old sixth grade student at J.C. Fremont Elementary School. Broadly, plaintiffs allege two types of culpable conduct on the part of defendants. First, plaintiffs allege that Drew Ibach, a student teacher assigned to the classroom of Patricia McCaffrey, Oona's teacher, sexually assaulted and harassed Oona and other female students on more than one occasion. The complaint fur-

ther charges that the other defendant officials failed to take adequate steps to prevent Ibach's conduct. Second, plaintiffs allege that the defendant school officials and teachers created a hostile environment for female students, in large part by failing to prevent Oona's male peers from harassing her and other girls in her class.

1) Ibach's Conduct and Defendants' Responses

According to the complaint, one day in early October of 1992, Ibach approached Oona in the classroom while she was seated at her desk studying. Ibach sat down in a chair close behind Oona in such a manner that his legs were straddling her body, and spoke with Oona and another student while leaning over Oona's shoulder. When Oona moved her chair forward and away from Ibach, he also moved his chair forward and resumed the same position. Plaintiffs allege that this conduct was part of a pattern and practice on the part of Ibach during September and October of 1992 of staring at, winking at, whispering to, hugging, and otherwise inappropriately touching female students in McCaffrey's class. Plaintiffs further allege that some of this inappropriate conduct occurred in the presence of defendants McCaffrey and Gerald Hill, the school's principal.

On October 15, 1992, Ibach approached Oona on the playground and fondled Oona's buttocks while whispering "Hi, Oona Noodles" in her ear. "Oona Noodles" was a nickname Ibach had given Oona earlier in the school year. Startled, Oona swung around, hitting Ibach on the arm. Because she was worried about getting into trouble for hitting Ibach, Oona did not report this incident to her teacher McCaffrey. After school, Oona told her mother, plaintiff Kate S., about the incident with Ibach. Kate S. called McCaffrey and told her what Oona had said, and requested that the school immediately remove Ibach from Oona's classroom. While maintaining that she could not believe Ibach could have done what Oona claimed, McCaffrey said that she would speak to Hill, the principal, about the matter the next day.

On October 16, Oona's father, plaintiff Ken R., met with Hill and requested that Ibach be removed from Oona's classroom. Hill refused on the ground that Oona's account of the incident was "unverified." Hill said that he had discussed Oona's allegations with Ibach and felt that Oona may have misinterpreted Ibach's intentions. Hill agreed, however, that there was no circumstance in which it was appropriate for a teacher to touch a student's buttocks. Ken R. told Hill that he did not want Oona and Ibach to be in the same classroom. Hill asked to discuss the matter further with Ken R. and Kate S. at some time within the next few days.

On October 18, Hill reiterated that Ibach would not be removed from McCaffrey's class, and suggested that Oona transfer to another sixth grade classroom. Oona's parents did not want to separate Oona from her friends in McCaffrey's class, however, and reluctantly agreed to allow Oona to remain in the classroom with Ibach.

A few days later, the mother of one of Oona's female classmates found her daughter crying in her bedroom and writing a letter to McCaffrey explaining that Ibach made the girls in the class very uncomfortable. The mother met with McCaffrey, who stated that the girl had been upset by a "lie" which Oona had told and subsequently "admitted" to McCaffrey. Unsatisfied, the mother told McCaffrey that the situation seemed more serious than McCaffrey apparently perceived it to be.

Some time after this meeting, McCaffrey called in five to seven of Oona's classmates and questioned them, in defendant Hill's presence, about Ibach's behavior and their feelings toward Ibach. Oona was not present at this meeting. Plaintiffs allege that several of the girls reported that Ibach had behaved inappropriately toward them.

On October 29, Oona told her parents that she thought Ibach had been removed from McCaffrey's classroom. A day later, however, Oona informed her parents that Ibach had been seen back on school grounds during school hours. Ken R. and Kate S. made an effort to find out whether Ibach had been formally removed and, if so, why he had been seen on school grounds. They were unable,

however, to obtain this information from the defendants.

Ken R. and Kate S. directly asked defendant Director of Elementary Education Ron Lundy on November 2 whether Ibach had been removed from his position as a student teacher at the school. Lundy responded that Ibach had been formally removed, and stated that Ibach's return to the school on October 30 had been unauthorized. Lundy said that the plaintiffs had not been informed of Ibach's removal because personnel matters were confidential. When Ken R. asked Lundy who plaintiffs should contact to discuss any other concerns or complaints which might arise with regard to Ibach, Lundy allegedly provided "no information" in response to Ken R.'s question.

### 2) Student-to-student harassment

Throughout the fall and winter of the 1992–1993 school year, McCaffrey allowed the students in her sixth grade class to watch MTV without adult supervision. While watching MTV, some of the boys in the class made loud and vulgar comments of a sexual nature about the women in the music videos shown on the station.

In late February 1993, Oona told her parents that some boys in her class had repeatedly referred to girls' body parts as "melons" and "beavers." In a class meeting procedure designed to resolve student disputes, Oona had "written up" two of the boys for asking if she "had a beaver at home" and if she had "left her melons at home." The boys yelled out these statements in the vicinity of school employees including McCaffrey. At a meeting at which McCaffrey was present, Oona requested that the boys apologize and pay a fine in "funny money" under the class grievance procedure. The boys were fined $10.00 in funny money but not required to apologize.

On February 24, 1993, Oona's parents reported to McCaffrey and defendant Deputy Superintendent of Schools Larry White that Oona was being called a "ho" (a slang term for "whore") and a "lesbian" by the boys Oona had previously written up for calling her names. Neither McCaffrey or White,

the complaint alleges, investigated this claim or took disciplinary action against the boys.

In early March, Oona told her parents that one of the boys that she had previously written up had struck her in the face and told her, "Get used to it." After this incident, Oona again wrote the boy up in the class log book. Ken R. immediately reported this occurrence to principal Hill, and plaintiffs allege that Lundy "was also informed" of this incident. No investigation of this claim was undertaken, and no disciplinary action was taken against the boy.

Also in early March, Ken R. and Kate S. received a letter from defendant Lundy indicating that Lundy, McCaffrey, and Hill had previously been unaware of any sexual harassment in Oona's classroom. A two-page pamphlet entitled "Sexual Harassment—Students" was enclosed with the letter. On March 29, Kate S. asked Lundy for information on the school district's sexual harassment grievance procedure. She received no response to that request.

On March 30 and 31, Kate S. reported to the offices of Lundy and Hill that she objected to MTV being shown in McCaffrey's classroom due to its sexist content. Around April 1, McCaffrey informed the students in her class that they could no longer watch MTV because a parent had complained.

When report cards were issued on April 4, Oona received a "C-" in writing for the third quarter of the school year. Oona had received an "A-" in writing the previous quarter. Oona's grades for academic effort were also lower than they had been the semester before. Plaintiffs imply that the drop in Oona's grades was the result of retaliation by McCaffrey against Oona and was motivated by the complaints voiced by the plaintiffs.

On April 5, Kate S. told defendant Hill that a classmate of Oona's did not want to attend a field trip to a water park because boys in her class had called her "jello" (referring to her large breasts) and talked about her "beaver." Hill responded that Oona could transfer to any other elementary school in the district that she wanted to.

Kate S. filed a tort claim against defendants Santa Rosa City Schools, McCaffrey,

Ibach, Hill, and Lundy on April 8.[1] On that date, Kate S. also filed a Discrimination Complaint Form with the Office for Civil Rights of the United States Department of Education. On April 9, Kate S. received a letter from defendant Deputy Superintendent Mel Solie accompanied by a seven-page document entitled "Sex Harassment."

After Kate S. filed these claims, plaintiffs allege that McCaffrey continued to retaliate against Oona. On April 23, McCaffrey refused to allow Oona to stay after school with other students to work on the school newsletter because no teacher would be present, telling Oona that "your mom wouldn't like you to be here unsupervised." A few days later, on April 26, McCaffrey cancelled a play in which Oona was to perform on the night of the 26th at an "Open House" at the school. None of the other events scheduled for the Open House were cancelled.

When the slapping incident which had occurred in early March came up for discussion on the class meeting log book on May 8, 1993, McCaffrey reprimanded Oona for writing the boy up rather than reporting the incident to McCaffrey immediately.[2] McCaffrey also criticized Oona's requested punishment as too lenient, and spoke with the boy privately for approximately 15 minutes. No disciplinary action followed this meeting. The next week, on May 10, Kate S. filed a report with the Santa Rosa Police against Ibach. No defendant had previously done so.

After the end of the school year, plaintiffs allege that McCaffrey engaged in one last act of retaliation. On July 9, Kate S. contacted the Gateway Reading Council, an organization which had selected Oona to receive a "Young Writers Award" the previous March, to ask why Oona had not yet received her award. Kate S. was informed that the prize, a book containing the stories written by Oona and other award winners, had earlier been sent to Oona's school for delivery to her. When Kate S. asked McCaffrey where the book had gone, McCaffrey said that she believed that she had thrown it away.

During the summer of 1993, plaintiffs decided to remove Oona from the Santa Rosa school system. Since that time, she has been schooled at home by her mother. On October 20, 1993, defendant District was informed that the Office for Civil Rights had reached a tentative finding that student-to-student harassment had occurred in McCaffrey's class, that this harassment had created a hostile environment for Oona, and that officials at the school knew or should have known of the harassment but failed to take timely, effective action to prevent it from continuing.

In the instant action, plaintiffs bring suit against the District and the individual defendants under a number of federal and state law theories, including the deprivation of rights secured by the Equal Protection Clause, the Due Process Clause, and Title IX, 20 U.S.C. § 1681. Defendants do not dispute that plaintiffs have properly stated a claim against defendant District for violation of Title IX, 20 U.S.C. § 1681, and its implementing regulations. Defendants move to dismiss plaintiffs' claims brought against the individual defendants under 42 U.S.C. § 1983, however, on the grounds that 1) an action against an individual District employee cannot properly be based on the alleged deprivation of a student's rights under Title IX; and 2) that even if the Court recognizes such a cause of action under section 1983, the conduct alleged by plaintiffs is insufficient to state a claim. The individual defendants also argue that they are entitled to qualified immunity, necessitating the dismissal of plaintiffs' section 1983 claims at this stage.

## II. *LEGAL STANDARD*

Dismissal is appropriate under Rule 12(b)(6) when plaintiff's complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts

---

1. This claim was rejected by Santa Rosa City Schools on August 24, 1993.

2. The Court urges plaintiffs to verify the accuracy of the date included in this allegation, as May 8, 1993 was a Saturday, meaning that school presumably was not in session that day.

alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). The Court must accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the plaintiff. *Dodd v. Spokane County*, 393 F.2d 330, 334 (9th Cir.1968); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). The Court must construe the complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Intake Water Co. v. Yellowstone River Compact Comm'n*, 769 F.2d 568, 569 (9th Cir.1985), *cert. denied*, 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986).

## III. DISCUSSION

### A. Motions to Dismiss § 1983 Claims on Merits

This case presents important issues regarding the viability of a cause of action against an individual state official under 42 U.S.C. § 1983 based on that official's alleged deprivation of rights conferred on a plaintiff by Title IX and the Fourteenth Amendment. No Supreme Court or circuit court decision of which this Court is aware has addressed the question of whether a cause of action will lie under section 1983 against a teacher or school official alleged to have engaged in or allowed the sexual assault and harassment of a student in violation of Title IX. Plaintiffs' suit therefore raises substantial questions of law and policy regarding the interaction between section 1983 and the substantive rights which it is intended to protect.

### 1. The Section 1983 Cause of Action

█ In order to state a claim under § 1983, a plaintiff must allege two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States; and 2) that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988). *Respondeat superior* is not a sufficient basis for imposing § 1983 liability. *Monell v. De-partment of Social Servs.*, 436 U.S. 658, 663–64 n. 7, 98 S.Ct. 2018, 2021–22 n. 7, 56 L.Ed.2d 611 (1978); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir.1984). Instead, in order to state a claim under § 1983, a plaintiff must allege facts to show that the defendant 1) personally deprived the plaintiff of a protected right; or 2) in a supervisory capacity, took culpable action or wrongfully failed to act in the training, supervision, or control of his subordinates, acquiesced in the constitutional deprivations complained of, or engaged in conduct demonstrating a "reckless or callous indifference to the rights of others," or 3) was responsible for an official policy or custom which resulted in the violation. *Ybarra*, 723 F.2d at 680–81; *Larez v. Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991) (citations omitted).

In this case, it is undisputed that the alleged actions and/or failures to act attributed to the individual defendants, a public school teacher, a student teacher, and several administrators, occurred under color of state law. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 n. 4 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 25 (explaining that where a " 'real nexus' exists between the activity out of which the violation occurs and the teacher's duties and obligations, then the teacher's conduct is taken under color of state law"). The sole issue before the Court, therefore, is whether each named defendant deprived Oona of a constitutional or federal statutory right within the meaning of controlling precedent.

### 2. The Relationship Between Section 1983 and Title IX

#### a. Does Title IX create a right enforceable under 1983?

Title IX of the Educational Amendments of 1972 provides that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any edu-

cation program or activity receiving Federal financial assistance. . . .

20 U.S.C. § 1681(a).

The central questions raised by defendants' motion to dismiss concern whether Title IX creates a right enforceable by plaintiffs under section 1983 here and, if so, whether plaintiffs have alleged facts sufficient to state a section 1983 claim against any or all of the defendants.

■ Well-settled Supreme Court precedent establishes that a right of action under section 1983 will lie only where 1) the underlying substantive statute at issue creates "enforceable rights," and 2) Congress has not foreclosed private enforcement through section 1983 in the statute itself. *Wright v. Roanoke Redevelopment and Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987) (explaining that section 1983 provides a remedial cause of action for a state actor's deprivation of a right secured by a federal statute "unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement"); *Pennhurst State Sch. & Hospital v. Halderman,* 451 U.S. 1, 28 and n. 21, 101 S.Ct. 1531, 1545 and n. 21, 67 L.Ed.2d 694 (1981); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981).

Similarly, the Ninth Circuit has held that "at least the existence of a federal right ... is required in order to support a section 1983 action." *Boatowners and Tenants Ass'n v. Port of Seattle,* 716 F.2d 669, 673 (9th Cir. 1983). The *Boatowners* court applied the analysis set out in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), in which the Supreme Court held that a "statute create[s] a federal right in favor of the plaintiff" where the plaintiff is "one of the class for whose *especial* benefit the statute was enacted." *Id.* at 672 (quoting *Cort* at 78, 95 S.Ct. at 2087) (emphasis in original). *Boatowners* further noted that application of the *Cort* analysis "requires not only a consideration of whether the plaintiff is a member of the class for whose benefit the statute was enacted, but also whether 'Congress intended to confer federal rights upon those beneficiaries.'" *Id.* at 672–73 (quoting *Fisher v. City of Tucson,* 663 F.2d 861, 863 (9th Cir.1981)). *Boatowners* noted that "the special benefit test is satisfied where the statute places 'unmistakable focus on the benefitted class.'" *Id.* at 673 n. 5 (quoting *Limongelli v. Postmaster General,* 707 F.2d 368, 371 (9th Cir. 1983)).

■ The Court believes it indisputable that Title IX confers an enforceable right upon plaintiff Oona here within the meaning of *Boatowners.* Title IX unequivocally states that "no person" may lawfully be discriminated against or otherwise disadvantaged on the basis of her gender under the auspices of certain educational programs, and the Supreme Court has viewed such language as "dispositive" of the question whether Congress intended to vest an enforceable federal right in individuals claiming to have been so treated. *Cannon v. Univ. of Chicago,* 441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979). Because plaintiff alleges that she has been discriminated against on the basis of sex, her claim implicates a substantial federal right which is enforceable under section 1983, provided the second prong of the *Boatowners* test is met. *See Cannon,* 441 U.S. at 694, 99 S.Ct. at 1956 ("Title IX explicitly confers a benefit on persons discriminated against on the basis of sex, and petitioner [alleging that she was excluded from participation in a medical education program because of her sex] is clearly a member of that class for whose special benefit the statute was enacted.").

As to the second issue identified by the Supreme Court, the question of whether Congress intended to preclude enforcement of a particular right under section 1983, the Court finds nothing in the language of Title IX which reflects such intent on the part of Congress. Section 1983 provides a remedial cause of action for a state actor's deprivation of a right secured by a federal statute "unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright,* 479 U.S. at 423, 107 S.Ct. at 770. Where

" 'the remedial devices provided in a particular Act are sufficiently comprehensive ... to demonstrate Congressional intent to preclude' a Section 1983 remedy," no such claim will lie. *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 739 F.2d 1467, 1470 (9th Cir.1984), *citing Middlesex County Sewerage Auth. v. Nat'l Sea Clammers,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). The state actor bears the burden of proving that Congress intended to foreclose a private right of action under the statute establishing the right. *Wright,* 479 U.S. at 423, 107 S.Ct. at 770.

The Supreme Court's decision in *Cannon* established that Title IX does not expressly foreclose a private right of action. 441 U.S. at 717, 99 S.Ct. at 1968. Defendants argue, however, that the remedial scheme created by Title IX is "sufficiently comprehensive" to demonstrate Congress' intent to preclude a section 1983 remedy.

■ The Court finds that defendants have not met their burden of showing that Title IX's remedial devices are sufficiently comprehensive to demonstrate Congress' intent to preclude enforcement of rights created by Title IX under section 1983. The *Cannon* Court, having thoroughly analyzed the legislative history of Title IX, directly addressed the lack of comprehensiveness of the enforcement scheme under that statute:

> [The Court has] never withheld a private remedy where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute.... As the Government itself points out in this case, Title IX not only does not provide such a mechanism, but the complaint procedure adopted by [the

agency responsible for enforcement of the statute at that time] does not allow the complainant to participate in the investigation or subsequent enforcement proceedings. Moreover, even if those proceedings result in a finding of a violation, a resulting voluntary compliance agreement need not include relief for the complainant.

441 U.S. at 706 n. 41, 99 S.Ct. at 1962 n. 41 (citations omitted).

In *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Supreme Court reaffirmed the holding of *Cannon* in finding that the remedy of damages is available in an action brought to enforce Title IX, even though the statute does not explicitly authorize an award of damages. The *Franklin* Court analyzed two Congressional amendments to Title IX enacted after the *Cannon* decision and concluded that "Congress did not intend to limit the remedies available in a suit brought under Title IX." 503 U.S. at 71, 112 S.Ct. at 1036. The *Franklin* decision, therefore, constitutes strong evidence that the Supreme Court still would not consider the enforcement structure of Title IX to be sufficiently comprehensive to preclude the enforcement under section 1983 of rights created by Title IX.

Defendants present no evidence that Title IX's enforcement scheme has changed since the *Cannon* decision in 1979. Moreover, the lower court cases cited by defendants were all decided before the Supreme Court's recent holding in *Franklin* implicitly rejected the position that the remedial mechanism provided in Title IX is so comprehensive as to preclude any other remedies, including the enforcement of Title IX rights under section 1983.[3] In light of the Supreme Court's as-

---

**3.** Defendants cite *Pfeiffer v. Marion Ctr. Area Sch. Dist.,* 917 F.2d 779 (3d Cir.1990), *Mabry v. State Bd. for Community Colleges and Occupational Educ.,* 597 F.Supp. 1235 (D.Colo.1984), *aff'd on other grounds,* 813 F.2d 311 (10th Cir.1987), *cert. den.* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104, and *Bougher v. Univ. of Pittsburgh,* 713 F.Supp. 139 (W.D.Pa.1989), *aff'd on other grounds* 882 F.2d 74 (3d Cir.1989). However, not only were these cases decided before the *Franklin* Court revisited the preclusion of remedies issue, none of these decisions relied upon

the type of thorough analysis of the comprehensiveness of Title IX's remedial scheme required to establish Congressional intent to foreclose a section 1983 remedy. *See, e.g., Bougher,* 713 F.Supp. at 146 (summarily concluding, without analysis, that Title IX is a statute "which contains its own remedies and is implemented through its own procedural scheme"); *Pfeiffer,* 917 F.2d at 789 (accepting, without analysis, district court's refusal to reach plaintiff's § 1983 constitutional claims because such claims were "subsumed" by Title IX and barred by the *Sea Clammers* comprehensiveness doctrine); *Mabry,*

sessments in *Cannon* and *Franklin* of the limited preclusive significance of Title IX's enforcement mechanisms, therefore, the defendants have not met their burden of showing that the remedial scheme under Title IX is sufficiently comprehensive to preclude plaintiffs from maintaining a section 1983 claim based on alleged violations of Title IX.

Because Title IX creates an enforceable right and the statute does not reflect Congress' intent to preclude plaintiffs from enforcing that right by way of section 1983, therefore, the Court finds that a section 1983 action may properly be based on alleged violations of Title IX. That holding does not conclude the Court's task here, however, for it remains to be determined whether the conduct alleged by plaintiff amounts to a deprivation of a right secured by Title IX within the meaning of relevant precedent. *See Hill v. Ibarra*, 954 F.2d 1516, 1522 (10th Cir.1992) (noting that it is "self-evident ... that a § 1983 claim premised upon rights created in another federal statute cannot survive the failure to establish a violation of the latter").

b. Deprivation of any Title IX right?

As noted above, Title IX states that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681 (emphasis added). The Supreme Court has emphasized that federal courts should accord to Title IX "a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521, 102 S.Ct. 1912, 1917, 72 L.Ed.2d 299 (1982). However, at least two central questions pertinent to plaintiffs' claim in this case have yet to be directly addressed by the Supreme Court or any circuit court in the section 1983 setting: 1) What is the nature of the right created by

Title IX in this context?; and 2) What type of conduct by a defendant amounts to a deprivation of that right?[4] The Court addresses each of these issues in turn below.

i. Nature of the Title IX Right in the Sexual Harassment Context

In the absence of specific Supreme Court or Ninth Circuit precedent directly addressing this question, the Court must look to Title IX itself and to interpretations of the statute by various courts to determine whether the conduct alleged here amounts to a deprivation of a right secured by Title IX.

Federal courts interpreting Title IX have heeded *North Haven*'s direction to read the statute so as to broadly proscribe discrimination on the basis of sex in the educational setting. *See, e.g., Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 77, 112 S.Ct. 1028, 1039, 117 L.Ed.2d 208 (1992) (explaining that Title IX "unquestionably ... place[s] on [school districts] the duty not to discriminate on the basis of sex"); *Cohen v. Brown Univ.*, 991 F.2d 888, 894 (1st Cir.1993) (noting that "the statute's heart is a broad prohibition of gender-based discrimination in all programmatic aspects of educational institutions"); *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 833 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 580, 126 L.Ed.2d 478 (referring to "Title IX's goal of protecting private citizens against discriminatory practices").

■ These interpretations of Title IX as conferring upon individuals a firm right not to be discriminated against on the basis of gender in all aspects of federally-funded educational programs find strong support in the language of the statute itself. Title IX explicitly provides that no person "shall, on the basis of sex, *be excluded* from participation in, *be denied* the benefits of, or *be subjected*

---

597 F.Supp. at 1239 (summarily stating that trial court was "convinced" that plaintiff's remedies under Title IX would have been comprehensive and adequate had she prevailed on that claim). These cases, therefore, do not provide very persuasive evidence of Congress' intent to preclude a section 1983 remedy, especially in light of *Franklin*.

**4.** This two-part inquiry tracks the standard for evaluating motions to dismiss set out by this

Circuit in *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). In other words, the Court must here both determine whether plaintiffs have stated a cognizable legal theory under relevant precedent and, if so, decide whether plaintiffs have alleged facts sufficient to establish their entitlement to recovery under that theory.

*to discrimination "* under any educational program or activity receiving federal funding. 20 U.S.C. § 1681(a) (emphasis added). The fact that Title IX focuses on the individual's rights under the statute, rather than simply imposing sanctions on educational institutions which discriminate, strongly indicates that the right created by Title IX to be wholly free from discrimination attributable to that institution and its employees is a *personal* right. *See Cannon,* 441 U.S. at 690–693, 99 S.Ct. at 1954–55 (noting that "[t]here would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefitted class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices").[5]

5. The *Cannon* Court contrasted the language eventually codified in Title IX with an alternative proposal considered but rejected by Congress before the statute's enactment. Unlike Title IX, the proposed statute was not phrased in terms of an individual plaintiff's rights. Instead, it provided that the Secretary of the Department of Health, Education, and Welfare, at that time the official who would be responsible for the enforcement of the statute, "shall not make any grant ... [to] any institution of higher education ... unless the application ... for such grant ... contains assurances ... that any such institution ... will not discriminate on the basis of sex in the admission of individuals." 441 U.S. at 693 n. 14, 99 S.Ct. at 1955 n. 14. Unlike the language of the current statute, such a construction could not fairly have been read to confer a right not to be discriminated against upon an individual plaintiff under the analysis set out by the Ninth Circuit in *Boatowners.*

6. Defendants base their argument that plaintiffs' section 1983 claim should be precluded here in large part on their reading of *Doe v. Petaluma City School District,* 830 F.Supp. 1560 (N.D.Cal. 1993). The *Doe* court held that "individuals may not be held personally liable under Title IX." *Id.* at 1577. The individual defendants assert that to allow plaintiffs to bring a section 1983 action against them as individuals when no action would lie under Title IX itself would be somehow improper. Under defendants' reasoning, a plaintiff should be allowed to enforce under section 1983 only those substantive rights which she could enforce directly under the statute creating those rights.
    Defendants' position is at odds with controlling precedent in this circuit. In *Boatowners,* 716

Viewed together, Title IX and those federal decisions which have interpreted it stand for the principle that Title IX confers on plaintiffs an individual right not to be discriminated against or disadvantaged in the administration of educational programs on the basis of gender. Accordingly, the Court holds that where a plaintiff sufficiently alleges that she has been deprived, under color of state law, of her right not to be discriminated against on the basis of sex within the meaning of Title IX, she has stated a claim under section 1983.[6]

An essential question, however, remains for the Court to resolve in determining the scope of the right not to be discriminated against created by Title IX and enforceable under section 1983 in the instant context: whether intentional discrimination by a state actor is an element of a violation of that right.[7] For the reasons explained be-

F.2d at 674, the Ninth Circuit rejected the argument that "a plaintiff who [is] unable to demonstrate a private right of action under [a federal] statute would necessarily be barred from seeking a section 1983 remedy." The opinion explained that "there are both substantive and evidentiary distinctions between the [statutory and section 1983] causes of action," most notably the presumption that a federal statute creating enforceable rights may be enforced in a section 1983 action. *Id.* The *Boatowners* court concluded that "the plaintiff who establishes the existence of an enforceable right will be free to proceed under section 1983," and noted that "there could well be federal rights enforceable under section 1983 which are not enforceable by means of a private right of action under the statute creating them." *Id.*

    The Court has already found that Title IX confers a personal right not to be discriminated against on a group of individuals to which plaintiff belongs. Accordingly, the Court concludes that, under *Boatowners,* plaintiff here may enforce that right against the individual defendants under section 1983, even assuming *arguendo* that she could not do so under Title IX itself.

7. This question is of central importance in evaluating plaintiffs' section 1983 claim, as it is well settled that such a plaintiff must allege and eventually prove all elements, including culpable state of mind if applicable, necessary to establish a violation of the right upon which the section 1983 claim is based. *See Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986) (explaining that "in any given § 1983 suit, the plaintiff must still prove a

low, the Court finds that intentional discrimination is an element of a claim that an individual official has violated a plaintiff student's rights under Title IX by engaging in or allowing sexual harassment of that student.[8]

In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 75, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992), the Supreme Court held that monetary damages were available as a remedy in a Title IX enforcement action brought by a private plaintiff against a school district. The plaintiff in *Franklin* was a high school student who alleged that she had been subjected to continual sexual harassment by one of her male teachers. Plaintiff further charged that teachers and administrators at her school took no action to halt their subordinate's harassment of the plaintiff even though they were aware of and had investigated the harassment. 503 U.S. at 62, 112 S.Ct. at 1031. Neither the teacher alleged to have harassed the plaintiff nor the other individual officials were themselves defendants in plaintiff's Title IX action at the time the case was reviewed by the Supreme Court.[9]

In finding that a damages remedy was available in plaintiff's Title IX action, the *Franklin* Court explained that the withholding of monetary damages was not justified in cases in which intentional discrimination was alleged, and described the circumstances under which an institutional defendant in a Title IX action will be found to have intentionally discriminated:

> In *Pennhurst State School and Hospital v. Halderman* ..., the Court observed that remedies were limited under [statutes enacted pursuant to Congress' Spending Clause power] when the alleged violation was *unintentional*. Respondents and the United States maintain that this presumption should apply equally to *intentional*

violation of the underlying constitutional [or federal statutory] right; and depending on the right, merely negligent conduct may not be enough to state a claim").

8. The Court is aware of holdings from courts in other circuits stating that a plaintiff may make out a violation of Title IX without proving a defendant's specific intent to discriminate. *See Roberts v. Colorado State Bd. of Agriculture*, 998 F.2d 824, 832 (10th Cir.1993) (holding that under Tenth Circuit precedent the "district court did not err ... in failing to require proof of discriminatory intent" in Title IX action); *Cook v. Colgate Univ.*, 802 F.Supp. 737, 741 (N.D.N.Y. 1992), *vacated*, 992 F.2d 17 (2d Cir.1993) (finding that "Title IX ... can be violated without showing a specific intent on the part of the educational institution to discriminate against women"). However, those decisions which have addressed the intent issue and found that no showing of intentional discrimination is required have involved suits against educational institutions alleging inequitable allocation of resources to athletic programs serving males and females. *See Roberts*, 998 F.2d at 824 (discontinuation of university's women's varsity softball program); *Cook*, 802 F.Supp. at 737 (denial of varsity status to women's ice hockey team); *Cohen v. Brown Univ.*, 991 F.2d 888 (1st Cir.1993) (revocation of varsity status of women's volleyball and gymnastics teams).

Because a plaintiff's Title IX claim in an inequitable funding case is fundamentally different from plaintiffs' discriminatory treatment claim here, the Court sees no inconsistency in requiring a plaintiff to prove discriminatory intent in the latter type of case even where she might not be required to do so in the former. Unlike the

cases considered by courts in the funding context, suits like the instant action necessarily implicate the mental state of the individual defendants to the extent that plaintiffs directly allege that those officials took particular actions which disadvantaged Oona and other female students *because* those students were female. The primary problem present in an allocation of resources suit against an institution—the difficulty of proving, or even defining, an institution's "discriminatory intent" based on its funding decisions—is not present in a suit in which plaintiffs allege a direct violation of a student's rights under Title IX by individual officials who, because of that student's sex, discriminate against her.

For this reason, the Court's holding requiring a plaintiff student to allege discriminatory intent in order to state a section 1983 claim based on sexual harassment in violation of Title IX is in no way meant to imply that such a standard would necessarily be properly applied in Title IX actions involving disparate impact/inequitable funding claims. Rather, today's ruling is limited to the circumstance in which a plaintiff student claims that her rights under Title IX have been violated by the participation of school officials in sexual harassment or their failure to prevent or remedy such harassment by others (including other students).

9. The teacher alleged to have engaged in the sexual harassment was never a defendant in the lawsuit, and the only individual defendant in the case had been dismissed by the district court. *See Franklin v. Gwinnett County Public Schs.*, 911 F.2d 617, 622 (11th Cir.1990).

violations. We disagree. The point of not permitting monetary damages for an unintentional violation is that the [institution receiving federal funding] lacks notice that it will be liable for a monetary award. This notice problem does not arise in cases such as this, in which intentional discrimination is alleged. Unquestionably, Title IX placed on the [defendant school district] the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." We believe that the same rule should apply when a teacher sexually harasses and abuses a student. Congress surely did not intend for federal monies to be expended to support the intentional actions it sought by statute to proscribe.

503 U.S. at 73, 112 S.Ct. at 1037 (citations omitted).[10]

In distinguishing *Pennhurst* and explaining that intentional discrimination creates a *prima facie* entitlement to monetary damages under Title IX in a way that unintentional conduct simply does not, therefore, the *Franklin* decision implicitly holds that intentional discrimination is an element of a claim that a school district has violated a plaintiff's rights under Title IX, at least where that student seeks to obtain damages against the district for harassment engaged in by an employee. Further, in establishing that a school district will be found to have intentionally discriminated when one of its employees sexually harasses and abuses a student,

*Franklin* clearly assumes that the conduct of the employee who actually engages in such harassment constitutes a violation of that student's rights under Title IX as well. *See Doe v. Petaluma City School Dist.*, 830 F.Supp. at 1575 ("Although not expressly stated in the opinion, the rule laid down by *Franklin* appears to be that, under Title IX, damages are available only for intentional discrimination but respondeat superior liability exists, so that an institution is deemed to have intentionally discriminated when one of its agents has done so.").

■■■ The logical conclusion to be drawn from these two premises is that when a student seeks recovery under section 1983 against an individual school official based on that official's alleged engagement in or failure to prevent sexual harassment in violation of her rights under Title IX, that student must as a preliminary matter establish that one of two prerequisites is satisfied. The plaintiff student must show that each defendant official either intentionally discriminated against her on the basis of sex or is liable under standard section 1983 supervisory liability principles for his own wrongful conduct in supervising a subordinate who intentionally discriminated. Where, as in *Franklin*, the plaintiff student alleges that a teacher or other school official has directly engaged in harassment, such a showing may be made by establishing that each defendant official has either sexually harassed the plaintiff, *Franklin*, 503 U.S. at 73, 112 S.Ct. at 1037, or is responsible for the harasser's conduct under

---

10. The *Franklin* Court refused to address the question of whether Title IX was in fact enacted pursuant to the Spending Clause power. 503 U.S. at 75 n. 8, 112 S.Ct. at 1038 n. 8 ("Because we conclude that a money damages remedy is available under Title IX for an intentional violation irrespective of the constitutional source of Congress' power to enact the statute, we need not decide which power Congress utilized in enacting Title IX.").

The Supreme Court recognized in *Cannon v. Univ. of Chicago* that "Title IX was patterned after Title VI," and noted that the two statutes were to be interpreted in a similar manner. 441 U.S. at 694–96, 99 S.Ct. at 1956–57. Under Title VI, "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

In *Guardians Association v. Civil Service Commission of New York*, 463 U.S. 582, 610–11, 103 S.Ct. 3221, 3236–37, 77 L.Ed.2d 866 (1983), the Supreme Court held, without a majority opinion, that Title VI plaintiffs must prove discriminatory intent on the part of a defendant in order to obtain damages under that statute. That decision also strongly suggested that Title VI, the statute upon which Title IX is based, was enacted pursuant to the Spending Clause. *See* 463 U.S. at 598, 103 S.Ct. at 3230 ("I note first that Title VI is spending-power legislation") (White, J., plurality opinion). For this reason, this Court assumes, absent direction to the contrary from the Ninth Circuit or the Supreme Court, that Title IX was likewise enacted pursuant to the Spending Clause. *See Doe*, 830 F.Supp. at 1574 n. 9.

principles of supervisory liability. Where plaintiff's peers or other non-officials are alleged to have engaged in sexual harassment, a plaintiff must likewise establish either intentional discrimination or direct supervisory responsibility for a subordinate official's discriminatory conduct on the part of each individual defendant named.[11]

■ The Court finds that the reasoning of *Franklin* and *Doe* persuasively establishes that intentional discrimination is an element of a Title IX claim against an institutional defendant in circumstances like those present in the instant action. Accordingly, following the reasoning of those holdings to their logical conclusion in the context of a suit brought under section 1983, the Court holds that a plaintiff must prove that an individual defendant either intentionally discriminated against her or had supervisory responsibility for a subordinate's intentional violation of the plaintiff's rights in order for such a claim based on the violation of rights under Title IX to lie against that defendant. The Court is confident that this holding is true to the spirit of the Supreme Court's mandate that rights under Title IX be given a sweep as broad as the language of that statute while remaining consistent with the clear import of the *Franklin* decision.[12]

## ii. Have Plaintiffs Sufficiently Alleged a Deprivation of Oona's Rights Under Title IX?

Having concluded that plaintiffs' claim is legally cognizable, the Court must next determine, under the second prong of the *Balistreri* standard, whether the facts alleged by the plaintiffs are sufficient to state a section 1983 claim against any or all of the defendants. Plaintiffs base their claim that defendants violated Oona's rights under Title IX here on two broad classes of conduct: 1) Ibach's alleged harassment and assault of Oona; and 2) alleged harassment of Oona by other students. In effect, the structure of plaintiffs' complaint suggests two independent potential theories of liability with regard to every individual defendant besides Ibach: supervisory liability for Ibach's actions, and liability, either direct or supervisory, based on the student-to-student harassment endured by Oona. The Court must accordingly decide whether either or both of these types of conduct as pleaded constitute a deprivation of rights protected by Title IX sufficient to state a claim under section 1983 against any or all of the named defendants.

### a. Ibach's Conduct

■ The complaint alleges that Ibach on one occasion suddenly approached Oona from behind on the playground, fondled her but-

---

**11.** As the *Doe* court has explained, the reasoning of *Franklin* compels the conclusion that a finding that a student's rights under Title IX have been violated in the peer harassment context requires a determination that at least one defendant official has affirmatively discriminated against that student on the basis of gender:

> [*Franklin*] require[s] that discriminatory intent be shown before damages are recoverable.... The court holds that no damages may be obtained under Title IX (merely) for a school district's failure to take appropriate action in response to complaints of student-to-student sexual harassment. Rather, the school district must be found to have intentionally discriminated against the plaintiff student on the basis of sex. The school's failure to take appropriate action, as alleged in plaintiff's complaint, could be circumstantial evidence of intent to discriminate.

830 F.Supp. at 1576; *see also Houston v. Mile High Adventist Academy*, 846 F.Supp. 1449, 1457 (D.Colo.1994) (citing *Franklin* and holding, in case in which plaintiff student claimed that she had been subjected to sexual harassment at school, that "a plaintiff may recover damages for

the violation of Title IX only for intentional violations").

**12.** In their complaint, plaintiffs maintain that Title IX imposes on defendant school officials "a legal and equitable duty to provide a discrimination, harassment, and retaliation-free environment." Compl. 18:10–11. The Court finds plaintiffs' reading of Title IX as requiring schoolteachers and administrators to absolutely guarantee the existence of a "discrimination-free" or "harassment-free" environment troubling in this context and unsupported by the language of the statute.

The language of Title IX clearly reflects Congress' intent to confer on individuals a right not to be discriminated against on the basis of sex by state actors. From this premise, it follows that the ultimate fact which a plaintiff seeking to make out a claim based on an alleged violation of Title IX must prove is that the defendant *in fact* discriminated against her because of her sex, not that the defendant failed to guarantee that the plaintiff would not be exposed to any such discrimination by third parties.

tocks and whispered "Hi, Oona Noodles," a nickname which he had given her, in her ear. Compl. 6:5–8. Ibach, and only Ibach, addressed Oona in class and on school grounds on several occasions by this nickname, stopping only when she asked him to. Compl. 4:20–5:5. The complaint further alleges that on a different occasion Ibach sat down close behind Oona with his legs straddling her body and leaned over her, and resumed this position even after she attempted to move away from him. Compl. 5:6–13. Plaintiffs allege that Ibach singled Oona out for this unwelcome attention on the basis of her sex.

The Court finds that plaintiffs have stated a claim under section 1983 against Ibach based on his alleged deprivation of Oona's rights secured by Title IX. The Supreme Court and lower federal courts have indicated that actions like those allegedly taken by Ibach can constitute gender discrimination within the meaning of Title IX. As the Court explained in *Franklin:*

> Unquestionably, Title IX placed on [school district] the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." ... *We believe the same rule should apply when a*

*teacher sexually harasses and abuses a student.*

503 U.S. at 73, 112 S.Ct. at 1037 (citation omitted) (emphasis added).[13]

In *Patricia H. v. Berkeley Unified School District,* 830 F.Supp. 1288, 1293 (N.D.Cal. 1993), the court held that a plaintiff student could state a claim for hostile environment sexual harassment under Title IX based on the alleged conduct of a teacher. Taking note of the legislative history of Title IX and a number of other factors, including the criteria applied by the Office of Civil Rights of the Department of Education, the *Patricia H.* court explained that a plaintiff's rights under Title IX are infringed where a teacher sexually harasses a student because "[a] sexually abusive environment inhibits, if not prevents, the harassed student from developing her full intellectual potential and receiving the most from the academic program." 830 F.Supp. at 1293 (*quoting* Ronna Greff Schneider, *Sexual Harassment and Higher Education,* 65 Tex.L.Rev. 525, 551 (1987)).

Taking plaintiffs' allegations as true, as it must on this motion to dismiss, therefore, the Court concludes that plaintiffs have stated a section 1983 claim against Ibach based on his alleged discrimination against Oona in contravention of Title IX.[14]

---

**13.** The Supreme Court has defined actionable "hostile environment" sexual harassment as that which is "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). One commentator notes that "[s]exual harassment can [take] many forms: verbal harassment such as sexual comments or name calling; leering or ogling; jokes or pictures; unnecessary touching; sexist remarks about a person's clothing, body, or sexual activities; constant brushing up against a person's body; subtle or overt pressure for sexual favors; physical assault; and rape." Monica L. Scherer, Comment, *No Longer Just Child's Play: School Liability Under Title IX for Peer Sexual Harassment,* 141 U.Pa.L.Rev. 2119, 2127 (1993).

Taking the facts in the complaint as true, as it must on a motion to dismiss, the Court finds that plaintiffs have sufficiently established that Ibach's behavior toward Oona and her female classmates constituted sexual harassment.

**14.** Under Ninth Circuit precedent, where subjective intent is an element of the violation alleged under section 1983, plaintiffs must "state in their

complaint nonconclusory allegations setting forth evidence of unlawful intent" on the part of defendant officials. *Branch v. Tunnell,* 937 F.2d 1382, 1386 (9th Cir.1991), *cert. denied,* —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Such evidence may be either direct or circumstantial. *Id.* at 1387. If a plaintiff fails to set forth such evidence of intent on the part of named defendant officials in her complaint, the district court may dismiss plaintiff's claim against those officials. *See id.* at 1388 (reversing district court's denial of defendant's motion to dismiss and remanding for reconsideration in light of newly-stated heightened pleading standard).

The Court first concludes that subjective intent is an element of plaintiffs' § 1983 claim in this case. Plaintiffs base their claim on alleged violations of Title IX and the Equal Protection and Due Process clauses of the Constitution. Discriminatory intent is an essential element of plaintiffs' claim based on Title IX for the reasons explained above. Discriminatory intent is similarly an element of a section 1983 claim based on the Equal Protection clause. *See Bator v. Hawaii,* 39 F.3d 1021, 1028 n. 7 (9th Cir.1994) (explaining that "a plaintiff must show intention-

Accordingly, Ibach's motion to dismiss plaintiff's section 1983 claim against him is DENIED.[15]

The more difficult question is whether plaintiffs have stated a viable section 1983 claim against the other individual named defendants predicated on a theory of supervisorial responsibility for Ibach's conduct. As explained above, no section 1983 liability may attach under a theory of *respondeat superior*. *Monell v. Department of Social Servs.*, 436 U.S. 658, 663–64 n. 7, 98 S.Ct. 2018, 2021–22 n. 7, 56 L.Ed.2d 611 (1978); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir.1984). Instead, as a general rule, "[a] supervisor cannot be held liable under § 1983 for the constitutional deprivations caused by his subordinate, absent his participation or direction in the deprivation." *Ybarra*, 723 F.2d at 680. The Ninth Circuit has held that "[s]upervisory liability is imposed against a supervisory official in his individual capacity for his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' ... for his 'acquiescence in the constitutional deprivations of which the complaint is made,' ... or for conduct that showed a 'reckless or callous indifference to the rights of others.'" *Larez v. Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations omitted).

■ The Court finds that plaintiffs have alleged facts sufficient to state a section 1983

claim based on supervisorial liability against defendants McCaffrey, Hill, and Lundy.[16] Plaintiffs allege that Ibach committed acts of harassment against female students in clear view of McCaffrey and Hill. Complaint 5:18–20. Further, the complaint alleges that McCaffrey and Hill failed to respond appropriately to Ibach's conduct. Complaint 6:13–28; 7:1–20; 8:4–16. Finally, the complaint alleges that Lundy failed to respond to Ken R.'s request for information regarding the appropriate person to contact with any further concerns or complaints about Ibach's conduct. Complaint 9:6–8. Construing these allegations liberally, as it must on this motion to dismiss, plaintiffs' allegations state a claim under section 1983 against these three defendants based on culpable action or inaction in the training, supervision, or control of their subordinate Ibach and/or acquiescence in his conduct which deprived Oona of her rights under Title IX.

The Court finds, however, that plaintiffs have failed to allege facts sufficient to establish the supervisory liability under section 1983 of defendants Solie, White, and Alsobrook. The complaint contains no factual allegations of any kind pertaining to these defendants, meaning that their inclusion in this action as presently pled can only be based on a *respondeat superior* theory. Because no *respondeat superior* liability exists under section 1983, however, plaintiffs' claims against these defendants must be

al discrimination ... for equal protection claims"). While at present it is not clear whether an allegation of reckless, as opposed to intentional, conduct is sufficient to state a claim under the Due Process clause, *see Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), plaintiffs have based their § 1983 claim on some combination of these statutory and constitutional sources rather than bringing three discrete claims. Considering plaintiffs' § 1983 claim as a whole, therefore, the Court finds it appropriate to apply the *Branch* heightened pleading standard in ruling on defendants' motion to dismiss.

The Court finds that plaintiffs have met the *Branch* standard with respect to Ibach here. The allegations in the complaint regarding Ibach's behavior, taken as true, are nonconclusory and sufficient to support an inference that Ibach intentionally discriminated against Oona on the basis of her sex. Accordingly, dismissal of plaintiffs' claim under *Branch* at this time would be inappropriate.

15. In light of its ruling that plaintiffs have stated a section 1983 claim against Ibach based on his alleged deprivation of rights conferred on Oona under Title IX, the Court need not address the contention raised by Ibach on his motion to dismiss that "the factual conduct complained of could not, as a matter of law, implicate any constitutional right" under the Fourteenth Amendment. Ibach's Mem. P & A Support Mot. Dismiss at 6. As explained above, section 1983 also provides a remedy for the deprivation of federal *statutory* rights under color of state law, and plaintiffs have sufficiently alleged such a deprivation here.

16. The viability of plaintiffs' claim against Lundy depends in part on whether he is being sued in his official or individual capacity, a question which plaintiffs must resolve in an amended complaint. *See* note 22, *infra*.

DISMISSED WITH LEAVE TO AMEND to the extent that these defendants' alleged liability is predicated on supervisory responsibility for Ibach's conduct. Plaintiffs may amend their claims against these officials within 30 days of the date of this Order to allege facts sufficient to establish these defendants' supervisory liability for Ibach's alleged conduct under the test set out in *Larez.*

b. Student-to-student harassment

Drawing in large part on legal theory developed by the Supreme Court in cases brought under Title VI, the civil rights statute upon which Title IX is based, a court in this district held in 1993 that a school district violates Title IX when it discriminates against students on the basis of sex, and that district officials' failure to take appropriate action to remedy peer sexual harassment can constitute evidence of such discriminatory intent. *See Doe,* 830 F.Supp. at 1575 (explaining in case involving alleged peer harassment that "[s]urely [a student] is 'denied the benefits of, or subjected to discrimination under' an education program on the basis of sex when, as alleged here, she is driven to quit an education program because of the severity of the sexual harassment she is forced to endure in the program"). Recently, the Ninth Circuit strongly implied, in dicta, that school teachers and administrators have a duty under Title IX to take steps to curb peer sexual harassment. *Clyde K. v. Puyallup Sch. Dist. No. 3,* 35 F.3d 1396, 1401 (9th Cir.1994) (explaining that "[g]iven the extremely harmful effects [peer] sexual harassment can have on young female students, public officials have an especially compelling duty not to tolerate it in the classrooms and hallways of our schools") (citing Monica L. Scherer, Comment, *No Longer Just Child's Play: School Liability Under Title IX for Peer Sexual Harassment,* 141 U.Pa.L.Rev. 2119, 2133–35 (1993)).[17]

The Court believes that *Doe,* especially read in light of the Ninth Circuit's recent statement in *Clyde K.,* stands for the proposition that the right created by Title IX may be violated when female students are subjected to sexual harassment by their male peers at school and school officials discriminate against the female students on the basis of sex in encouraging or failing to appropriately respond to such harassment. Such discrimination may manifest itself in the active encouragement of peer harassment, the toleration of the harassing behavior of male students, or the failure to take adequate steps to deter or punish peer harassment. *Cf. Doe,* 830 F.Supp. at 1575–76.

Under this standard, the Court finds that plaintiffs have alleged facts which, construed liberally, state a section 1983 claim against defendants McCaffrey, Hill and Lundy[18] predicated on the peer sexual harassment endured by Oona.[19] Plaintiffs allege that McCaffrey intentionally discriminated against Oona on the basis of her sex by refusing to take sufficient action to counter persistent harassment by Oona's peers and by retaliating against Oona on more than one occasion for objecting to that harassment. Complaint 9:9–13:24. Similarly, plaintiffs allege that Hill and Lundy failed to adequately investigate or take steps to punish those responsible for repeated instances of peer harassment reported to them by Oona and her parents. Complaint 10:10–11:24. Under the liberal test applied in ruling on a motion to dismiss, therefore, the Court is convinced that dismissal of plaintiff's claims against

17. The Court believes that the facts alleged in the complaint, taken as true, sufficiently establish that Oona's male classmates subjected her to sexual harassment. *See* note 13, *supra.*

18. Again, the sufficiency of plaintiffs' claim against defendant Lundy will depend on whether he is being sued in his official or his individual capacity. *See* note 22, *infra.*

19. Because, as previously explained, intentional discrimination is an element of plaintiffs' section 1983 claim based on defendants' alleged encouragement or tolerance of peer sexual harassment in violation of Title IX, the Court must apply the heightened pleading standard set out in *Branch.* Applying that standard, the Court finds plaintiffs' allegations nonconclusory and sufficient to support an inference that McCaffrey, Hill and Lundy intentionally discriminated against Oona on the basis of her sex. For this reason, these claims are sufficiently pled under the *Branch* standard and should not be dismissed at this stage.

McCaffrey, Hill, and Lundy would be inappropriate at this stage.[20]

■ However, as noted above, plaintiffs have failed to include in their complaint any factual allegations whatsoever with regard to defendants White, Solie, and Alsobrook. Thus, whether plaintiffs' claim against these three defendants is based upon their alleged personal discrimination against Oona or upon their alleged failure to adequately supervise and control McCaffrey and their other subordinates, the complaint as currently configured does not provide the factual support necessary to state a claim against any of these three officials.[21] Apart from plaintiffs' bald assertion that it is "absolutely inconceivable" that these defendants did not know of their obligations to remedy discrimination within the meaning of Title IX, no basis other than a pure *respondeat superior* theory could possibly underlie plaintiffs' claim against these officials in the absence of at least some factual allegations of wrongful conduct. Because this theory clearly does not support imposition of liability under sec-tion 1983, plaintiffs' claims against White, Solie, and Alsobrook are DISMISSED WITH LEAVE TO AMEND. Plaintiffs may amend their claims against these officials within 30 days of the date of this Order to allege facts sufficient to establish a basis for section 1983 liability. To the extent that plaintiffs' claim is based on alleged discrimination against Oona by each individual District official personally, plaintiffs must plead facts sufficient to support an inference that each defendant intentionally deprived Oona of her right under Title IX not to be discriminated against on the basis of sex. To the extent that plaintiffs' claim is based on the District officials' supervisory liability for the actions of McCaffrey and other District employees, plaintiffs must plead facts sufficient to state a claim against each defendant under the test set out in *Larez v. Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991), as explained above.[22]

**B.  *Qualified Immunity Defense***

■ Defendants next argue that, even if plaintiffs have successfully stated a claim

---

**20.** The Court stresses that if discovery does not reveal facts sufficient to support plaintiffs' assertion that defendants intentionally discriminated against Oona on the basis of her sex, plaintiffs' claim would be unable to survive a motion for summary judgment.

**21.** Plaintiffs' papers suggest that their claim against the District administrators is premised primarily on the theory that the personal actions of those officials directly contributed to the creation of a hostile atmosphere for Oona and other female students. *See* Mem. P & A Opp'n Defs.' Mot. Dismiss at 10 ("[D]efendants' wrongful conduct also consisted of actively creating, developing, and maintaining a climate of blatant sexual favoritism. . . . *Th[e] harassment was then exacerbated by the school district officials' own failure to investigate and/or punish the boys who were verbally and physically harassing Oona,* or punish defendants McCaffrey and Hill for allowing the harassment to continue. . . .") (emphasis in original). As noted above, however, plaintiffs provide absolutely no factual examples of ostensibly discriminatory conduct on the part of White, Solie and Alsobrook.

**22.** The Court trusts that plaintiffs' complaint will not be amended to include new factual allegations against defendants White, Solie, and Alsobrook unless plaintiffs' counsel first satisfy their obligation under Rule 11 of the Federal Rules of Civil Procedure to verify that any new allegations are well grounded in fact.

The Court also notes that at oral argument, plaintiffs' counsel stated that only three individual defendants—McCaffrey, Ibach, and Hill—were being sued in their individual capacities. This response appears to contradict plaintiffs' complaint, which names as defendants in the section 1983 claim "McCaffrey, Ibach, Hill, Lundy, Solie, White, and Alsobrook, *Individually.*" Complaint 18:2–4 (emphasis added).

The Court directs plaintiffs to file an amended complaint within 30 days of the date of this order unambiguously specifying the capacity, official or individual, in which each defendant is being sued. That distinction is of central importance in determining the scope of immunity, if any, to which the defendants are entitled. Supreme Court precedent clearly establishes that a suit against a state official in her official capacity is treated as a suit against the state, and Eleventh Amendment immunity applies in such suits. *Hafer v. Melo,* 502 U.S. 21, 23–25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) (explaining that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). However, a suit against a state official in her individual capacity is not so barred. 502 U.S. at 31, 112 S.Ct. at 365 (holding that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983" and noting that

under section 1983, they are entitled to qualified immunity from liability on that claim.[23] They argue that it was not clearly established in late 1992 and early 1993 that the conduct alleged by plaintiffs constituted a violation of plaintiff Oona's constitutional or statutory rights. Further, defendants argue that plaintiffs' own allegations in the complaint establish that the defendants acted reasonably under the circumstances of this case and ought not be held liable for damages. Not surprisingly, plaintiffs dispute both of these claims.

■ Preliminarily, the Court notes that the proper framing of the qualified immunity analysis to be applied by the Court in this case is not entirely clear under Ninth Circuit precedent. As a general rule, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). However, in a 1988 decision which was subsequently vacated by the Supreme Court on mootness grounds, the Ninth Circuit held that "qualified immunity is not a defense in cases involving intentional racial or other similar discrimination." *Gutierrez v. Municipal Court,* 838 F.2d 1031, 1051 (9th Cir.1988), *vacated as moot,* 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989). As plaintiffs here allege that defendants inten-

tionally discriminated against Oona on the basis of her sex, therefore, defendants' qualified immunity claim must necessarily fail at the present stage under *Gutierrez* if that decision retains precedential force on this point.[24]

Further, even if *Gutierrez* does not provide the controlling standard here, the Court finds that it would be inappropriate to grant qualified immunity to the defendants on the instant motion to dismiss. Since *Harlow,* the Supreme Court has not to this Court's knowledge considered a qualified immunity case in which intent or motive was an element of the constitutional offense at issue. The Ninth Circuit, however, has recently noted that the *Harlow* analysis, which focuses on the "objective reasonableness" of a defendant official's conduct, can produce outcomes which are "nonsensical in relation to a constitutional tort that depends on a subjective element, an invidiously discriminatory intent, for its very viability." *Lindsey v. Shalmy,* 29 F.3d 1382, 1384 (9th Cir.1994). Application of a purely objective test in such instances, as explained by the *Lindsey* court, would lead to an unacceptable result: defendant officials alleged to have invidiously discriminated against plaintiffs would invariably be found immune from liability for their actions.[25] *Id.*

■ Faced with the conundrum of remaining faithful to the objective rationale of *Harlow* without effectively eliminating plaintiffs' right to recover damages in an entire class of cases, the Ninth Circuit in *Lindsey*

"the Eleventh Amendment does not bar such suits").

**23.** As school and district administrators and teachers, the individual defendants are clearly entitled to assert the defense of qualified immunity. *See Wood v. Strickland,* 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975) (school board members entitled to assert qualified immunity defense to suit brought under § 1983); *Bilbrey v. Brown,* 738 F.2d 1462, 1467 (9th Cir. 1984) (teacher and vice-principal entitled to qualified immunity under certain circumstances).

**24.** As the Ninth Circuit persuasively explained in *Gutierrez:*
    If the plaintiff fails to establish that the discrimination was intentional, the claim fails. If the plaintiff does establish such intent, there can be no qualified immunity. Thus, it seems simpler to say that qualified immunity is not a defense in such cases, rather than that the

defense prevails where proof of intentional discrimination is not established.
    838 F.2d at 1051 n. 29. *See also Sanchez v. Santa Ana,* 936 F.2d 1027, 1040 (9th Cir.1990), *cert. denied,* 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (apparently citing *Gutierrez,* after that case had been vacated, for the proposition that governmental officials are not entitled to qualified immunity from a section 1983 action based on intentional discrimination). *But see Garcia v. Spun Steak Co.,* 998 F.2d 1480, 1487 n. 1 (9th Cir.1993) (stating that *Gutierrez* "has no precedential authority ... because it was vacated as moot by the Supreme Court," and concluding that the *Garcia* court was "in no way bound by [*Gutierrez's*] reasoning").

**25.** *Lindsey* makes no mention of the apparent resolution of this dilemma by *Gutierrez,* and does not indicate whether that decision retains any precedential value on the qualified immunity issue.

fashioned a test which allows courts to take subjective intent into account under some circumstances in determining whether a defendant is entitled to qualified immunity. Where the violation alleged depends upon a subjective element, the proper threshold question is whether a reasonable official in defendant's position at the relevant time would know that subjecting plaintiff to the treatment alleged *because of* her membership in a protected class would violate the plaintiff's clearly established federal statutory or constitutional rights. *Lindsey,* 29 F.3d at 1384 (emphasis added).[26] Where a plaintiff presents nonconclusory allegations of subjective motivation and supports those allegations by sufficient direct or circumstantial evidence, as required under *Branch,* therefore, a qualified immunity claim will be denied on a motion to dismiss. *See id.* at 1384–85 (discussing *Branch* and applying the holding of that case in the summary judgment context).

▨ Applying the standard set out in *Lindsey,* the Court finds that plaintiffs have stated a claim sufficient to make dismissal of defendants McCaffrey, Hill, and Lundy on qualified immunity grounds inappropriate at this time. As noted above, plaintiffs have sufficiently alleged that defendants McCaffrey, Hill, and Lundy discriminated against Oona both by failing to adequately supervise and control Ibach and by tolerating or condoning peer sexual harassment directed at Oona. As discussed below, the Court is confident that a reasonable school official would have known in 1992 and 1993 that the actions alleged by plaintiffs here in each of these regards would unquestionably violate Oona's federal statutory and constitutional rights.

### 1. Supervisory Liability

The Supreme Court held in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 73, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208

(1992), that when a teacher sexually harasses and abuses a student, that teacher discriminates on the basis of sex within the meaning of Title IX. Controlling precedent at that time also held that "[s]upervisory liability is imposed against a supervisory official in his individual capacity for his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' ... for his 'acquiescence in the constitutional deprivations of which the complaint is made,' ... or for conduct that showed a 'reckless or callous indifference to the rights of others.'" *Larez v. Los Angeles,* 946 F.2d 630, 646 (9th Cir. 1991) (citations omitted).

A reasonable school official during the 1992–1993 school year, therefore, would have known that her failure to properly train, supervise, or control a student teacher engaged in intentional discrimination against female students on the basis of their sex would violate the statutory and constitutional rights of those students. Plaintiffs have sufficiently alleged intentional discrimination on Ibach's part. Accordingly, plaintiffs have pleaded sufficient allegations to overcome defendants' qualified immunity defense to the supervisory liability claim on a motion to dismiss.

### 2. Student-to-student harassment

▨ As to the peer harassment claims, the Court finds that well-established precedent which should have been known to defendants in 1992–1993 made clear that disparate treatment of male and female students on the basis of sex with the intent to discriminate against the female students would violate those students' statutory and constitutional rights. *See Goodwin v. Circuit Court,* 729 F.2d 541, 546 (8th Cir.1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 339 (explaining that "[t]he right to be free of invidious discrimination on the basis of sex certainly is clearly established, and no one

---

**26.** A court in this district illuminatingly described, six years before *Lindsey,* a situation of the type which the *Lindsey* court presumably had in mind in detailing the qualified immunity standard to be applied in these cases:

[I]t is not a violation of the constitution for a government official to fire a black employee, but it most assuredly is a violation of clearly

established federal rights to fire an employee *because* he is black. "The act itself—the act of discharge—is neutral; it is the motive or the intent that makes the act both actionable and violative of clearly established law."
*Willson v. Cagle,* 711 F.Supp. 1521, 1530 (N.D.Cal.1988) (citation omitted).

who does not know about it can be called 'reasonable' in contemplation of law" (*citing with approval Flores v. Pierce*, 617 F.2d 1386, 1391–92 (9th Cir.1980), *cert. denied,* 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96); *Bator v. Hawaii*, 39 F.3d 1021, 1027–1029 (9th Cir.1994) (noting that the Ninth Circuit held in 1980 that "the constitutional right to be free from ... invidious discrimination is so well-established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it"); *Lindsey v. Shalmy*, 29 F.3d 1382, 1386 (9th Cir.1994) (noting that female plaintiff "had a clearly established federal constitutional right to be free of gender discrimination at the hands of a state actor in 1988").[27] Therefore, where a plaintiff has alleged facts sufficient to support an inference that the defendant acted with the intent to discriminate against plaintiff on the basis of her sex, qualified immunity should be denied at this stage.

As explained above, the Court finds that plaintiffs here have alleged facts sufficient to support a finding of intent against defendants McCaffrey, Hill, and Lundy, necessitating the denial of these defendants' qualified immunity claim. Accordingly, as prescribed in *Branch*, plaintiffs will be allowed to engage in narrowly tailored discovery limited to the issue of whether these three defendants acted with the intent to discriminate against Oona on the basis of her sex.[28]

If such discovery does not reveal sufficient factual support for plaintiffs' claim that each of these defendants either intentionally discriminated against Oona on the basis of her sex or is liable in a supervisory capacity for an official who so discriminated, any or all of the defendants may argue in a subsequent motion that they are entitled to summary judgment on qualified immunity grounds on the claim based on peer harassment.

## IV. CONCLUSION

For the reasons explained above:

1) Defendants' motion to dismiss is DENIED as to defendants McCaffrey, Hill, and Lundy (if Lundy is sued in his individual capacity).   2) The motion to dismiss is GRANTED as to defendants White, Solie, and Alsobrook, and the plaintiffs' claims against these defendants are DISMISSED.

---

**27.** The Court feels compelled to note that the great majority of authorities cited by plaintiffs in support of their argument on the qualified immunity issue—state statutes and school district policies—are *irrelevant* to the question of whether plaintiffs' claims are sufficient to withstand the defendants' qualified immunity challenge.  In order to defeat a qualified immunity claim at this stage in a section 1983 action, a plaintiff must sufficiently allege the deprivation of a clearly established right secured by *federal* statutory or constitutional law.  While the District's adoption of sexual harassment guidelines might indicate that the defendants *believed* the school could be held liable for peer sexual harassment, that belief in no way establishes that such a legal duty based on federal law *did* in fact exist at that time.  *See Ward v. County of San Diego*, 791 F.2d 1329 (9th Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987) (explaining that, in the absence of binding precedent, a court must

look to "all available *decisional* law including decisions of state courts, other circuits and district courts" to determine whether a right was clearly established at the time of the alleged violation) (emphasis added) (citation omitted).  Plaintiffs' claim that "it is absolutely inconceivable that a school district would go to the time, effort, and expense of creating ... policies ... specifically prohibiting student-to-student harassment if it did not fully recognize and understand its potential liability for its failure to prevent and stop it" thus provides the Court little or no useful guidance in resolving this complex question.

**28.** If plaintiffs amend their complaint to add sufficient allegations of intent on the part of defendants White, Solie, and Alsobrook with regard to the peer harassment claim, the Court may at that time allow limited discovery regarding the intent of these officials as well.